[No. B117790. Second Dist., Div. Five. June 17, 1999.]

BEATRIZ DELGADO et al., Plaintiffs and Appellants, v.
AMERICAN MULTI-CINEMA, INC., Defendant and Respondent.

COUNSEL

Law Offices of Federico Castelan Sayre and Thomas A. Brill for Plaintiffs and Appellants.

Molfetta & Associates and Jay S. Hill for Defendant and Respondent.

OPINION

**GODOY PEREZ, J.**—Appellants Beatriz and Marcos Delgado appeal from the dismissal of their complaint after the demurrer of respondent American Multi-Cinema, Inc. (AMC), was sustained without leave to amend. After review, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 7, 1995, the movie DEAD PRESIDENTS (Caravan Pictures 1995) was showing at respondent's theater in Long Beach. DEAD PRESIDENTS was an R-rated film, containing "extremely graphic depictions of violence and bodily injuries which were likely . . . [to] cause . . . minors to become emotionally disturbed." In keeping with movie industry practice, respondent's policy was not to admit anyone under 17 years old to an R-rated movie unless accompanied by an adult. Despite its policy, respondent admitted 13-year-old Raymond Aiolentuna and 2 of his underage friends to DEAD PRESIDENTS without checking their ages or requiring that an adult accompany them.

As the three youths watched the movie, Aiolentuna "became agitated and violent," stating during particularly violent scenes "I am going to have to shoot somebody." Immediately after the movie ended, Aiolentuna walked to a street corner one and a half blocks from the theater and shot and killed Marcos Delgado, Jr., appellants' son.

Based on the foregoing alleged facts, appellants sued respondent for negligence in admitting Aiolentuna to an R-rated movie unaccompanied by an adult. Respondent demurred to the complaint, arguing it failed to state a cause of action. The court sustained the demurrer with leave to amend, advising appellants to replead their complaint to include every allegation they could possibly muster. Appellants did so and respondent demurred again, reiterating that appellants failed to state a cause of action. The court sustained the second demurrer without leave to amend and dismissed the complaint. This appeal followed.

## STANDARD OF REVIEW

■ ". . . . 'We treat [a] demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the [appellant]." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## DISCUSSION

■ Appellants contend the trial court erred in finding their complaint did not state a cause of action for negligence because respondent assumed a duty of care to the public when it adopted the Motion Picture Association of America's voluntary film-rating system.[1] (See generally, Rest.2d Torts, § 323 [party may voluntarily assume a duty of due care].) Under that system, respondent was obligated to bar Aiolentuna from seeing DEAD PRESIDENTS, an R-rated movie, because he was unaccompanied by an adult. By failing to confirm whether Aiolentuna was old enough to see the movie, respondent breached its duty of care, which, according to appellants, led to their son's murder. We disagree.

■ The existence of a legal duty of care, the breach of which may constitute negligence, is a question of law which we independently determine. (*Ann M.* v. *Pacific Plaza Shopping Center*, *supra*, 6 Cal.4th at p. 674.) As we have previously explained, creation of a legal duty is fundamentally a policy determination: "The existence of a legal duty is a question of law which is simply an expression of the sum total of the policy considerations

---

[1]*Respondent appears to have misapprehended appellants' claim as one for premises liability. Broadly speaking, premises liability alleges a defendant property owner allowed a dangerous condition on its property or failed to take reasonable steps to secure its property against criminal acts by third parties. (See, e.g., Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Having misperceived appellants' claim, respondent's argument that it could not be liable under the facts alleged in appellants' complaint because respondent did not control the street corner on which the shooting occurred misses the mark. We agree with appellants that their complaint pleaded ordinary negligence, not premises liability. Accordingly, we review the complaint under traditional negligence standards.*

that lead a court to conclude that a particular plaintiff is entitled to protection. . . ." (*Jacoves* v. *United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 114 [11 Cal.Rptr.2d 468].) As noted by courts around the country, the movie industry's film-rating system is designed to allow parents to exercise control over what their children see. One such court explained, "The purpose of the R-rating is to alert parents of the need for discretion and scrutiny in deciding whether a movie should be viewed at all. Subsequently, if the decision is to allow the child to see the movie, a parent or guardian is then required to accompany the child to provide guidance on the subject for which it was R-rated. 'From the outset the purpose of the rating system was to provide advance information to enable parents to make judgments on movies they wanted their children to see or not to see. Basic to the program was and is responsibility of the parent to make the decision. [¶] . . . [¶] The only objective of the rating system is to advise the parent in advance so he or she may determine the possible suitability or unsuitability of viewing by children. . . .' " (*Desilets* v. *Clearview Bd. of Educ.* (1993) 266 N.J.Super. 531 [630 A.2d 333, 339]; see also *Miramax Films* v. *Motion Picture Ass'n* (1990)148 Misc.2d 1 [560 N.Y.S.2d 730, 732] ["The stated purpose of the rating system is 'to provide advance information to enable parents to make judgments on movies they wanted their children to see or not to see' . . . ."]; *State* v. *Tavone* (R.I. 1982) 446 A.2d 741, 742, fn. 1 [". . . the rating system was intended by its originator, the Motion Picture Association of America, to serve as a guide for parents"].) Measured by its goal of protecting children from objectionable films, the movie-rating system's duty flows to parents; it was not designed or intended to protect society at large. (Accord, *Abrams* v. *City of Rockville* (1991) 88 Md.App. 588 [596 A.2d 116, 122] [parents could state cause of action for negligence against after-school program which showed a horror movie rated PG (parental guidance advised) to a seven-year-old who then suffered sleeplessness and nightmares].) Therefore, respondent breached no duty to appellants—who are not Aiolentuna's parents—by letting Aiolentuna view a movie he should not have seen without an adult.

Appellants' reliance on *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36], is misplaced. There, the court found the risk of a car accident was foreseeable when the defendant radio station held an on-the-air contest promising a prize to whomever arrived first at a certain location. By tacitly encouraging speeding on crowded city streets, the radio station created a foreseeable risk of collisions for which it was liable. Appellant's attempt to bring themselves within *Weirum* fails, however, because they do not allege respondent encouraged Aiolentuna towards violence. Instead, they allege respondent failed to stop him from doing something his parents (or any other adult) could have permitted if they had been with him—watching an R-rated movie.

Appellants' reliance on *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851], is also misplaced. There, the court held parents could sue a school district for injuries their child suffered when he left school without authorization during school hours. The court found the district had a duty to supervise students while they were at school and was liable for injuries caused by negligently letting the boy wander from the campus. (*Id.* at p. 512) Appellants cite this decision for the proposition that a property owner's duty of care can extend to acts beyond the property line. The proposition is inapt, however, because the issue here is not whether respondent's duty reached to events such as the shooting outside its theater, but rather to whom that duty was owed.

Appellants also contend that even though they do not allege premises liability, their complaint nevertheless alternatively supports a cause of action under that doctrine were we to find it did not state a claim for ordinary negligence. In support, they cite decisions which imposed liability for a third party's criminal conduct where the defendants failed to exercise reasonable care over property they owned or controlled. (See, e.g., *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 803 [142 Cal.Rptr. 487] [landlord liable to tenant raped inside her apartment because landlord failed to provide adequate security in common areas]; *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 501-503 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] [condominium association liable to condominium owner for her rape because association failed to install sufficient common area lighting and prevented plaintiff from installing her own].) Those decisions are inapposite, however, because respondent had no ownership or control of the street corner where appellants' son was killed.

Appellants' contention that premises liability nonetheless attached because there was a "functional connection" between respondent's property and their son's death is unavailing.[2] In support, appellants cite *McDaniel* v. *Sunset Manor Co.* (1990) 220 Cal.App.3d 1 [269 Cal.Rptr. 196]. There, parents sued their landlord when their child almost drowned in a nearby creek after wandering through a hole in a fence separating their apartment building from the creek. In allowing recovery for the child's off-site injuries, the court found the landlord had a duty to keep the fence on its property in good condition. The decision is distinguishable, however, because the landlord's duty rested on the fence's condition, property the landlord owned and

---

[2]We understand appellants' "functional connection" contention to be their formulation of the well-established rule that premises liability can exist for injuries suffered off premises if a dangerous condition on the property substantially caused the injuries. (See, e.g., *Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701] [property owner liable for car accident on public street caused by shrubbery on his property].)

controlled. Here, in contrast, the physical condition of respondent's theater is not at issue and respondent had no control over the deadly street corner more than a block away.

Finally, appellants seek leave to file a second amended complaint. When the trial court sustained respondent's first demurrer, it did so with leave to amend, inviting appellants to plead their best possible case in a first amended complaint. Presumably, appellants' first amended complaint reflects their acceptance of the court's invitation. In seeking leave to file yet another amended complaint, appellants do not identify anything more they can add to the allegations they have already made. Accordingly, further leave is inappropriate. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318 [appellant bears burden of identifying new allegations which would justify granting additional leave to amend].)

## DISPOSITION

The judgment is affirmed. Each side to bear its own costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 15, 1999.