Filed 6/12/13 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTHONY PEDEFERRI et al., | 2d Civil No. B233542 |
| Plaintiffs and Respondents, | (Super. Ct. No. 56-2009-00357429-CU-PO-VTA) |
| v. | (Ventura County) |
| SEIDNER ENTERPRISES et al., | |
| Defendants and Appellants, | ORDER MODIFYING OPIINION |
| | AND DENYING REHEARING |
| JEREMY WHITE, | [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:

IT IS ORDERED that the opinion filed herein on May 15, 2013, be modified as follows:

1. On page 2, last line of first full paragraph, add the words "on liability and damages" to the end of the sentence.

2. On page 3, last line (sentence carries over to page 4), replace "At the close of plaintiffs' case, Bert's asked" to read: "After the Pedeferri plaintiffs rested, Bert's moved . . . ."

3. On page 4, carry-over paragraph from page 3, substitute for the last sentence the following: "The court and the parties treated the motion as timely, and the court denied the request."

4. On page 5, second full paragraph, first sentence, replace "White settled with all plaintiffs" to read: "White settled with the Pedeferri plaintiffs . . . ."

5. On page 5, second full paragraph, substitute for the last sentence the following:  "White has submitted a brief aligned with the Pedeferri plaintiffs in resisting Bert's request for a new trial."

6. On page 13, first full paragraph, fifth line, add "(*Raven H.*)" after "1025."

7. On page 16, second full paragraph, add footnote (which will be footnote 2) after the first sentence, which will read:

> For the first time in their petition for rehearing, the Pedeferri plaintiffs argue that Bert's forfeited this issue by not moving to strike this testimony until they had rested their case.  We disagree.  The trial court allowed the toxicologist to offer his opinion based on assumptions to be proven up by other evidence.  (Evid. Code, § 403, subd. (b), (c).)  In these circumstances, Bert's motion to strike was "timely made" (*id.*, § 353, subd. (a)), because it was made as soon as Bert's knew the Pedeferri plaintiffs had not established a factual foundation for the toxicologist's assumptions—that is, when the Pedeferri plaintiffs rested their case-in-chief.  The Pedeferris plaintiffs contend that motions to strike made after a party rests cannot be timely because, if granted, they deprive the party of the ability to cure the evidentiary deficiency.  However, this argument overlooks a court's power (and, in some instances, duty) to reopen a party's case.  (*In re Marriage of Olson* (1980) 27 Cal.3d 414, 422; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 886 [plaintiffs have a right to reopen to respond to nonsuit motion].)

8. On page 17, delete the second full paragraph (beginning "This error was prejudicial") and replace with the following:

> There is a "reasonable probability" that the admission of the toxicologist's unsupported opinion that White was a "chronic" marijuana user affected the jury's apportionment of liability between Bert's and White.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  The degree to which

2

White's marijuana binge contributed to the accident was hotly contested at trial. The toxicologist's opinion prejudiced Bert's because the plaintiffs used it to prove White was unimpaired, thereby reducing White's respective share of responsibility for the accident and increasing Bert's.

9. On page 18, first line in carry-over paragraph from page 17, add "the jury was instructed" before "that his opinion."

10. On page 18, add the following sentence at the end of the carry-over paragraph from page 17: "The jury's power to disregard answers to hypothetical questions unsupported by the facts did not obviously apply to the totality of the toxicologist's opinion, and did not cure its prejudicial effect."

11. On page 18, delete last paragraph (which carries over to page 19), beginning with "We therefore," and replace with the following:

We conclude that the erroneous admission of the toxicologist's opinion necessitates retrial of the entire liability portion of the trial. The Pedeferri plaintiffs argue that we need only remand on the issue of apportionment of liability because the toxicologist's opinion does not affect either our conclusion that Bert's owed a duty or the jury's finding that Bert's breached that duty. Although the toxicologist's opinion does not affect the issue of duty, there is nevertheless a "reasonable probability" that the jury's findings of breach and of causation were affected by that opinion. White provided the only eyewitness account of how the bikes were negligently secured while the truck was moving, and the toxicologist's opinion that White was unimpaired (and thus able to accurately perceive what was happening) ostensibly lent credence to White's account. Without the opinion minimizing White's culpability and inflating Bert's, the jury might have concluded that Bert's contribution to the accident was so "remote or trivial" as not to be a "substantial factor in causing harm." (*Raven H., supra,* 157 Cal.App.4th at p. 1025.) The Pedeferri plaintiffs note our conclusion that White's negligence was not a superseding cause as a matter

3

of law, but this conclusion also does not preclude a jury from finding as a factual matter that Bert's negligence was not a "substantial factor" in causing the accident.

We conclude that a retrial is appropriate on the issue of damages as well. We are mindful of the burden that retrying damages entails, as the damages trial was bifurcated and focused on different evidence than the liability trial. However, the same jury that found Bert's liable based in part upon the toxicologist's opinion also fixed damages, and the trial court in remitting the damages award found that this damages verdict was already tainted by an emotional response to the evidence presented. We accordingly conclude that retrial on liability alone would "deny [Bert's] a fair trial." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 696.)

12. On page 19, first sentence under DISPOSITION, add the words "on all issues" to the end of the sentence.

There is no change in the judgment.

Plaintiff and Respondent Pedeferris' petition for rehearing is denied.

---

CHANEY, Acting P. J.          JOHNSON, J.          HOFFSTADT, J.*

\* (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

4

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| ANTHONY PEDEFERRI et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>SEIDNER ENTERPRISES et al.,<br><br>    Defendants and Appellants,<br><br>JEREMY WHITE,<br><br>    Defendant and Respondent. | 2d Civil No. B233542<br>(Super. Ct. No. 56-2009-00357429-CU-PO-VTA)<br>(Ventura County) |


APPEAL from an order of the Superior Court of Ventura County. Vincent J. O'Neill, Jr.  JUDGMENT VACATED AND REMANDED.

Duane Morris LLP, Paul J. Killion, Max H. Stern and Colleen A. Cassidy for Defendants and Appellants Seidner Enterprises, LLC, RJS Financial and Bert's Mega Mall.

C. Michael Alder, Myers, Widders, Gibson, Jones & Schneider, Ferguson Case Orr Paterson LLP and Wendy C. Lascher for Plaintiffs and Respondents Anthony Pedeferri and Carrie Pedeferri.

Horvitz & Levy LLP, Mitchell C. Tilner, Peder K. Batalden and Kurt Boyd for Defendant and Respondent Jeremy J. White.

Does a commercial vendor owe a duty of care to persons on or near the roadway who are injured as a result of the vendor's negligence in loading and securing cargo in a vehicle in a way that distracts the vehicle's driver? Applying the controlling principles of California law, we conclude that such a duty exists and that a categorical "no duty" exception for vendors should not be created. We also hold that the driver's negligence in driving under the influence of marijuana does not constitute a superseding cause as a matter of law; instead, the issue of superseding cause is one for the jury. We nevertheless determine that the trial court abused its discretion in not striking, for lack of foundation, expert testimony that the driver in this case was a "chronic" marijuana user and thus unlikely to be impaired. Because the driver's impairment was crucial to the allocation of fault between the driver and vendor, we vacate the judgment and remand for a new trial.

FACTS AND PROCEDURAL HISTORY

I. *The Accident*

This case arises from a tragic accident that partially paralyzed plaintiff Anthony Pedeferri, a California Highway Patrol (CHP) officer, and took the life of Andres Parra (Parra), the young man on the side of the highway with him.

On December 19, 2007, defendant Jeremy White (White) careened off the northbound 101 Freeway and slammed into an Xterra parked on the right shoulder. The Xterra exploded in a fireball, killing its sole occupant, Parra. The impact threw Officer Pedeferri 78 feet from where he was standing, and paralyzed him from the armpits down.

At the time of the accident, White had "quite high" levels of marijuana in his blood. In the 24 hours leading up to the accident, White consumed half a marijuana cake, smoked three "bowls" of marijuana, ate a "pretty big marijuana cookie," and drank an eight-ounce marijuana tea. He was transporting two pounds of marijuana in his truck's toolbox.

Just 90 minutes before the accident, White left Bert's Mega Mall, a motorsports dealership operated by defendants Seidner Enterprises LLC and RJS Financial (collectively, Bert's). Bert's employees had loaded and strapped down two dirt

2

bikes in the bed of White's truck—a new dirt bike White just purchased and a bike already owned by White's friend and passenger Brian Kinsler (Kinsler).

As White drove at 74 miles-per-hour on a bumpy portion of the northbound 101 Freeway, just north of Ventura, he felt and saw the bikes "hopping around a little bit in the bed of the truck." The bikes moved from side to side, as well as back and forth. White then heard a popping sound. He asked Kinsler to look behind him at the truck's bed. Then, without braking, White took his eyes off the road to glance back over his left shoulder, and then his right. As he did, White steered his truck slightly to the right, and into Parra's Xterra on the side of the freeway.

White subsequently pled guilty to vehicular manslaughter while intoxicated. He was sentenced to 15 years in state prison.

## II. *The Litigation*

### A. *The complaint and trial*

Officer Pedeferri, his wife, and Parra's mother and father (collectively, plaintiffs) sued White for negligence and wrongful death. They later added Bert's as a defendant.

The case proceeded to a bifurcated jury trial. During the liability phase, plaintiffs' accident reconstruction expert testified that Bert's employees contributed to the accident by negligently loading and securing the bikes in the back of White's truck. Bert's expert offered a contrary opinion.

Plaintiffs also called two witnesses who addressed the contribution of White's marijuana use to the accident. A human factors expert testified that White's reaction to the movement of the dirt bikes and the popping sound was reasonable, and no different than a sober person's. A toxicologist also testified that White was "most likely" not impaired by his marijuana use because White was a "chronic user." The toxicologist defined a "chronic user" as a person who has used marijuana for "a long period of time" and who has "driven before with marijuana" in his system "over and over and over." The toxicologist assumed White had used marijuana for a while and that White had previously driven while under the influence of marijuana. At the close of plaintiffs' case,

3

Bert's asked the trial court to strike the toxicologist's testimony on the ground that plaintiffs had failed to adduce any evidence to support their expert's assumptions. The court denied the request.

Bert's was also not permitted to question the expert about the other drugs in White's bloodstream at the time of the accident—namely, Paxil, Soma, Vicodin, Ecstasy and cocaine. The trial court had previously ruled that this evidence had marginal probative value and should be excluded under Evidence Code section 352 because Bert's elected not to call a toxicologist to establish that the levels of those drugs in White's blood were sufficient to potentially impair his driving.

The jury unanimously found White to be negligent and, by a nine-to-three vote, also found Bert's to be negligent. The jury unanimously assigned 67 percent of the fault to White, and the remaining 33 percent to Bert's. Following a separate trial on damages, the jury awarded a total of $49.6 million to plaintiffs.

B. *Post-trial motions*

Bert's moved for judgment notwithstanding the verdict (JNOV) in part on the ground that Bert's sole duty was to load and secure cargo so it would not fall out—not to load and secure cargo so it would not distract a driver. The trial court found Bert's articulation of its duty too narrow. The court ruled that "there's a duty on a commercial vendor that loads the goods in the back of [a] truck to use care so that those on or near the roadways are not harmed."

Bert's also sought a new trial on two grounds pertinent to this appeal.[1] First, Bert's argued that the toxicologist's assumptions were never established. The trial court ruled that the factual basis for the expert's assumption that White had engaged in long-term marijuana use was "thin," but sufficient. The court did not expressly decide whether there was a factual basis for the expert's further assumption that White had previously driven while using marijuana.

---

[1] Bert's sought a new trial for jury misconduct as well. In light of our disposition, we need not reach Bert's challenges to the trial court's denial of a new trial on that basis.

Second, Bert's contended that the damages were excessive. The court found the jury's $49.6 million award to be excessive and likely the product of "sympathy for the plaintiffs and outrage at the conduct of defendant White," and granted a new trial on damages. Plaintiffs accepted remittiturs, and the court entered judgment against White for $14.84 million; against Bert's for $7.3 million; and against both defendants jointly and severally for $13.01 million.

White settled with all plaintiffs, and Bert's settled with the Parra plaintiffs. Thus, the sole remaining parties are the Pedeferri plaintiffs and Bert's. White has nevertheless submitted a brief aligned with the plaintiffs.

*DISCUSSION*

I. *Bert's Owed Plaintiffs a Duty to Carefully Load*
*and Secure Cargo in a Way that Will Not Distract the Driver*

It is not enough that Bert's may have been negligent in loading and securing the dirt bikes in the back of White's truck. "'Proof of negligence in the air, so to speak, will not do.' [Citations.]" (*Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339, 341.) To be liable to a particular plaintiff, Bert's must owe that plaintiff a duty to act carefully. (*Id.*, at p. 342.) Whether a duty is owed is ultimately a question of policy. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6. (*Ballard*)) As such, "[d]uty is a question of law for the court, to be reviewed de novo on appeal. [Citations.]" (*Cabral v. Ralph's Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*).)

Our first step is to articulate the duty at issue. Because Bert's concedes that vendors owe a duty to load and secure cargo so it will not fall out of a vehicle, Bert's contends that the only duty at issue in this case is a vendor's duty to load and secure cargo so it will not distract the driver with noise or movement where that cargo remains in the vehicle. This is too fine a hair to split. A driver can be distracted by negligently loaded or secured cargo when it remains in the vehicle as well as when it falls out. Consequently, we will frame the issue as whether a commercial vendor owes a duty of care to persons on or near the roadways who are injured as a result of the vendor's

5

negligence in loading and securing cargo in a vehicle in a way that distracts the vehicle's driver irrespective of whether the cargo remains in the vehicle.

We start with the basic tenet of California law that "everyone is required to use ordinary care to prevent causing injury to others.  [Citations.]"  (*Bloomberg v. Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 575 (*Bloomberg*); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)  This principle is codified in Civil Code section 1714, subdivision (a) ["Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill"].)  Bert's offers one reason why it *should* be excused from this general duty and two reasons why it *must* be excused.  We consider and reject each.

A.  *Policy-based categorical exemption from liability*

Bert's argues that policy considerations "justify a categorical 'no-duty' rule" that would absolve vendors of any duty to load and secure cargo in a vehicle so as not to distract the vehicle's driver.  We certainly possess the authority to exempt entire categories of negligent conduct from Civil Code section 1714's duty of care when such an exemption is "clearly supported" by public policy.  (*Cabral*, *supra*, 51 Cal.4th at p. 771; *Ballard*, *supra*, 41 Cal.3d at p. 573, fn. 6.)  Before exercising this authority, however, we must ascertain whether the harm flowing from the potentially exempted conduct is foreseeable, and if so, whether other public policy interests nevertheless counsel against imposing a duty.  (*Cabral*, *supra*, at pp. 774, 781; *Bryant v. Glastetter* (1995) 32 Cal.App.4th 770, 778 (*Bryant*).)

1.  *Forseeability*

Foreseeability is the "'. . . chief factor in [the] duty analysis.'  [Citation.]" (*Laabs v. So. Cal. Edison Co.* (2009) 175 Cal.App.4th 1260, 1272 (*Laabs*).)  For these purposes, our task is "not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct . . . ."  (*Ballard*, *supra*, 41 Cal.3d at p. 573, fn. 6.)  Instead, we must "evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party."  (*Ibid.*; *Bigbee v.*

6

*Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 (*Bigbee*).) The inquiry into foreseeability entails three considerations: "'[1] the [general] foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [and] [3] the closeness of the connection between the defendant's conduct and the injury suffered. . . .' [Citation.]" (*Cabral*, *supra*, 51 Cal.4th at p. 775, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 (*Rowland*), superseded on other grounds as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 722.)

Applying this analytical framework, we can generally foresee that a vendor's negligence in loading or securing cargo could harm others on the roadway. It is foreseeable that cargo negligently loaded or secured in a vehicle could distract the vehicle's driver in a variety of ways—by making noise, blocking the driver's view, interfering with his or her control of the vehicle, or falling out. It is further foreseeable that a driver so distracted could injure others on or near the roadway. (*Cabral*, *supra*, 51 Cal.4th at p. 781 [noting "general foreseeability of a collision between a vehicle leaving the freeway and one stopped alongside the road"]; e.g., *Arthur v. Santa Monica Dairy Co.* (1960) 183 Cal.App.2d 483 (*Arthur*) [distracted driver collides with parked vehicle].) This chain of foreseeability is both short and direct. Accordingly, the "connection between [the vendor's] conduct and the injury suffered" by those alongside the road is not "too attenuated." (*Cabral*, *supra*, at p. 779.) There is also little uncertainty regarding whether and how a roadside victim suffers injury in this scenario.

Bert's contends that intervening negligence by the vehicle's driver is not foreseeable. However, California law is to the contrary. In *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, our Supreme Court ruled that a CHP officer owed to persons he stops a duty to pull them over in safe locations, even if the stopped party is subsequently injured by a third party's negligent driving. (*Id.*, at pp. 716-717.) Courts reached similar conclusions in *Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830 (*Jackson*) and *Bloomberg*, ruling that a truck rental company and an auto club, respectively, owed a duty not to strand their customers on the side of the road where those customers were later hit by negligent third parties. (*Jackson*, *supra*, at pp.

7

1837-1845; *Bloomberg*, *supra*, 162 Cal.App.3d at pp. 575-576; see also *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 47 [radio station has a duty not to encourage listeners to drive recklessly to win a contest].) To be sure, the court in *Bryant* refused to allow a tow truck driver injured by a negligent third party's driving to sue the drunk driver whose arrest prompted the need for a tow. (*Bryant*, *supra*, 32 Cal.App.4th at pp. 778-782.) But that ruling turned on policy concerns, and not on an inability to foresee the tow driver's injury. (*Ibid.*) We therefore conclude that the harm to persons on the roadside is a foreseeable result of a vendor's negligence in loading or securing cargo into a vehicle, even if the vehicle's driver is also negligent.

2. *Countervailing public policy considerations*

Because on a "clear judicial day[], . . . a court can foresee forever" (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 668), foreseeability is just the first step in deciding whether to recognize or exempt a duty. The next step is to assess whether other public policies militate against a duty notwithstanding the general foreseeability of the harm. (*Bryant*, *supra*, 32 Cal.App.4th at p. 778.) The pertinent public policy considerations are: "'[1] the moral blame attached to the defendant's conduct, [2] the policy of preventing future harm, [3] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [4] the availability, cost, and prevalence of insurance for the risk involved.'" (*Cabral*, *supra*, 51 Cal.4th at p. 781, quoting *Rowland*, *supra*, 69 Cal.2d at p. 113.)

Three of these policy considerations do not support the creation of a "categorical no duty rule." Although a vendor in this context is not engaged in intentional misconduct, "moral blame" still attaches to any negligence on its part. (*Jackson*, *supra*, 16 Cal.App.4th at p. 1844.) Bert's argues that White's marijuana use was more morally blameworthy, but we are dealing with the *vendor's* duty, which focuses on the *vendor's* culpability; White's relative blameworthiness is pertinent to the separate issue of causation. Imposing a duty to carefully load and secure cargo, with resulting liability for the negligent discharge of that duty, would be effective in discouraging negligence and thereby preventing future harm. Moreover, Bert's has not presented any

8

reason to believe that vendors' insurance policies are unavailable to cover liability for negligence in any loading and securing of cargo they voluntarily undertake for their customers.

Bert's devotes its attention to the third factor, and presents four reasons why imposing a duty to load and secure cargo in a manner that will not distract a driver will be unduly burdensome and bad public policy. First and most broadly, Bert's argues that imposing this duty will discourage vendors from voluntarily agreeing to load and secure their customers' purchases, leaving the less-experienced customers to do it themselves and risking *more* accidents. Although vendors are potentially liable only if they voluntarily undertake to load and secure cargo (*Bloomberg*, *supra*, 162 Cal.App.3d at p. 575), we are not persuaded vendors will refuse to help their customers load and secure their recent purchases just because the vendors are required to do so carefully. More broadly, as between customers and vendors, it is more efficient for vendors to be the repository of expertise in loading and securing cargo and to absorb the cost of insurance either through special fees for loading or as part of their general customer service.

Second, Bert's contends that it will be difficult for a vendor to know what is distracting to a driver and hence impossible to guard against all such distractions. We agree that jurors will have to confront, on the facts of each case, whether a vendor's particular conduct was negligent and distracted the driver, but that is a question of breach for the jury—not the question of duty before us. (*Cabral*, *supra*, 51 Cal.4th at p. 772.)

Third, Bert's asserts that imposing a duty will transform vendors into the guarantors of all risk related to the cargo. This is incorrect. The existence of a duty is but the first of many elements of a tort claim. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) An injured plaintiff must also prove that the vendor breached the duty of care and proximately caused his or her injury. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 613-614.) Bert's reliance on *Delgado v. American Multi-Cinema, Inc.* (1999) 72 Cal.App.4th 1403 and *Dekens v. Underwriters Laboratories, Inc.* (2003) 107 Cal.App.4th 1177, is also misplaced. Those cases refused to recognize a duty in very different factual contexts. (*Delgado*, *supra*, at pp. 1406-1407 [theater owner did not owe

9

a duty to keep minors from seeing "R" rated movies so they would not be inspired by the movies to commit a murder]; *Dekens*, *supra*, at pp. 1181-1182 [lab that tested products for electrical safety did not owe a duty to guarantee those products did not cause asbestos-related harm].)

Lastly, Bert's argues that two statutes—Vehicle Code sections 22350 and 21701—embody a public policy against holding vendors liable for causing distractions. However, neither statute suggests or implies immunity for those who, by virtue of their negligence, distract drivers. (See Veh. Code, § 22350 [requiring drivers to drive no faster than conditions safely permit]; *id.*, § 21701 [prohibiting willful interference with a driver's control of a vehicle].)

Even if we assume that there are some countervailing policy reasons to immunize vendors, those reasons fall short of what is required to override the general rule in favor of imposing a duty for foreseeable injuries. California courts have given controlling weight to considerations of public policy only where the potential for tort liability directly leads to undesirable incentives or policy outcomes. (See *Bryant*, *supra*, 32 Cal.App.4th at pp. 782-783 [persons with disabled vehicles do not owe a duty to tow truck drivers because it is "unwise to create an incentive for drivers whose cars are disabled to attempt self-help solutions rather than call for assistance"]; *Lompoc Unified Sch. Dist. v. Super. Ct.* (1993) 20 Cal.App.4th 1688, 1697-1698 (*Lompoc Unified*) [landowners do not owe a duty to passing motorists not to distract them because it would obligate many landowners to build anti-distraction walls]; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 473-483 (*Parsons*) [garbage disposal companies do not owe a duty not to spook horses with their trucks because it would preclude the socially beneficial use of machinery in rural areas]; *Gilmer v. Ellington* (2008) 159 Cal.App.4th 190, 198 (*Gilmer*) [persons yielding the right of way to motorists making a left turn do not owe a duty to those motorists to check for clear oncoming traffic in all lanes because it would be unwise to absolve left-turn makers of the duty to check traffic]; see also *Williams v. Cingular Wireless* (Ind. Ct. App. 2004) 809 N.E.2d 473, 478-479 (*Williams*) [cell phone companies do not owe a duty to guard against the negligence of buyers who

10

make calls while driving because it would discourage sale of cell phones].)  Here, the potential for tort liability does not directly lead to undesirable incentives or policy outcomes.

In short, public policy does not provide a justification for a "categorical no duty rule."  (*Cabral*, *supra*, 51 Cal.4th at p. 772.)

B.  *Vendor's inability to control the driver*

Bert's next argues that vendors owe no duty because, under California law, vendors have no "special relationship" with persons on or near the roadways and thus no obligation to act carefully in loading or securing cargo in a way that avoids injuring those persons.  For support, Bert's cites *Richards v. Stanley* (1954) 43 Cal.2d 60, 65; *Southland Corporation v. Superior Court* (1988) 203 Cal.App.3d 656, 665-668; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 435, superseded by statute Civ. Code, § 43.92; *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1146. (Bert's also cites *Bryant*, *supra*, 32 Cal.App.4th 770, but *Bryant* does not support this proposition.)

The cases Bert's cites are inapposite.  That is because they address tort liability in cases of "nonfeasance"—that is, where the defendant is accused of negligence in not preventing the negligent or intentional acts of a third party.  Such authority is irrelevant in cases involving "malfeasance"—that is, where the defendant is accused of affirmatively doing something in a negligent way.  (*Jackson*, *supra*, 16 Cal.App.4th at pp. 1841-1842; *Cabral*, *supra*, 51 Cal.4th at pp. 778-779.)  Because plaintiffs seek to hold Bert's liable for its *misfeasance*, the additional "special relationship" element present in *nonfeasance* cases does not apply.

C.  *The immunity of a distraction's source*

Bert's also contends that California law already dictates that the person or entity responsible for distracting a driver can never be held liable in tort because the duty to control one's vehicle (including the duty not to be distracted) rests exclusively with the driver.  We disagree.

11

California law does not support the broad rule of immunity Bert's proffers. Three of the cases Bert's cites simply declared the distracted driver liable and did not declare the source of the distraction categorically immune. (See *Gray v. Brinkerhoff* (1953) 41 Cal.2d 180, 184 [not addressing source]; *Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 136 [same]; *Truman v. Vargas* (1969) 275 Cal.App.2d 976, 980 [passenger did not contribute to accident by waving to pedestrian].) Two other cases Bert's cites addressed liability in unique and distinguishable contexts. *Lompoc Unified*, *supra*, 20 Cal.App.4th, page 1693, applies the longstanding rule that landowners have no duties beyond the boundaries of their property, and *Coffman v. Kennedy* (1977) 74 Cal.App.3d 28, 32-33, refused to hold a passenger liable for her nonfeasance in not stopping her friend from driving while drunk. The remaining cases Bert's cites declined to hold the source of a distraction liable for public policy reasons, which we have already concluded are unpersuasive here. (See *Lompoc Unified*, *supra*, at pp. 1697-1698; *Parsons*, *supra*, 15 Cal.4th at pp. 469-470; *Gilmer*, *supra,* 159 Cal.App.4th at p. 198; *Williams*, *supra*, 809 N.E.2d at pp. 478-479.)

For these reasons, we hold that vendors owe a duty of care to persons on or near the roadway who are injured as a result of the vendor's negligence in loading and securing cargo in a vehicle in a way that distracts the vehicle's driver. Accordingly, the trial court did not err in denying Bert's JNOV motion on this ground.

II. *White's Intervening Negligence Did Not Sever the*
*Causal Link Between Bert's Negligence and Plaintiffs' Injuries*

In tort actions, the plaintiff must show that the defendant proximately caused his or her injuries. (*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594.) Proximate causation has two components—one grounded in facts and the other in normative questions of policy. (*PPG Indus., Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315-316 (*PPG*); *Jackson*, *supra*, 16 Cal.App.4th at p. 1847.) Bert's attacks both.

A.  *Cause-in-fact*

At trial, a plaintiff in a negligence action must establish, as a factual matter, that the defendant's negligence was a cause-in-fact of his or her injury.  (*PPG*, *supra*, 20 Cal.4th at p. 315 [defendant's acts must be a "necessary antecedent"].)  More than one cause-in-fact can contribute to an injury.  (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1025.)  A defendant's negligence is considered a cause-in-fact if it is "'[a] substantial factor in causing harm,'" which means it is "'more than a remote or trivial factor.'"  (*Ibid.*)  Because this is a factual question, we review the record for substantial evidence.  (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)  We accordingly resolve all evidentiary conflicts in favor of the jury's findings (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 964), and may overturn them only if "'. . . there is no room for a reasonable difference of opinion.'  [Citations.]" (*Bigbee*, *supra*, 34 Cal.3d at p. 56.)

Bert's argues that White was distracted solely by the popping noise, and contends that plaintiffs never established that it was more probable than not that the noise was caused by the negligently loaded or secured dirt bikes.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 776.)  Bert's explains that the bikes could not have distracted White because plaintiffs' accident reconstruction expert conceded that he did not know what caused the popping sound and that no physical evidence showed that the bikes had ever moved; moreover, all three eyewitnesses to White's driving never saw the bikes move.

Viewed in the light most favorable to the verdict, the evidence establishes that Bert's negligence in loading and securing the dirt bikes was a substantial factor in distracting White.  The popping noise was not the only thing that distracted White.  To the contrary, White had seen and felt the bikes hopping around in the bed of the truck prior to hearing the noise.  Moreover, two of the three eyewitnesses admitted that they could not say whether the bikes moved.  Under substantial evidence review, the absence of physical evidence of the bikes' movement is beside the point because the record contains White's testimony that he saw and felt the bikes move.

In sum, the evidence leaves room for a reasonable difference of opinion on the issue of cause-in-fact. Consequently, we may not upset the jury's finding on that issue.

B. *Superseding cause*

Even when a defendant's negligence is the factual antecedent to the plaintiff's injury, courts may for policy reasons deem the chain of causation severed. (*PPG*, *supra*, 20 Cal.4th at pp. 315-316; *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1045.) Bert's asks us to do so here. Bert's argues that White's negligence in consuming marijuana before driving, and in taking his eyes off the roadway for too long, constitutes a "superseding cause" of the accident that should entirely cut off Bert's liability. Because this entails a normative question of policy, it is a question of law we review de novo. (*Jackson*, *supra*, 16 Cal.App.4th at p. 1847.)

The intervening negligence (or even recklessness) of a third party will not be considered a superseding cause if it is a "normal response to a situation created by the defendant's conduct" (*Stewart v. Cox* (1961) 55 Cal.2d 857, 864) and is therefore "'. . . within the scope of the reasons [for] imposing the duty upon [the defendant] to refrain from negligent conduct'" in the first place (*Lugtu*, *supra*, 26 Cal.4th at p. 725; *Bigbee*, *supra*, 34 Cal.3d at pp. 58-59.) A cause is superseding only when the third party's intervening negligence is "highly unusual or extraordinary" (*Jackson*, *supra*, 16 Cal.App.4th at p. 1848), and "'. . . far beyond the risk the original tortfeasor should have foreseen . . .'" (*Lugtu*, *supra*, at p. 725). In making this assessment, we are to make a "'more focused, fact-specific' inquiry that takes into account a particular plaintiff's injuries and the particular defendant's conduct. [Citations.]" (*Laabs*, *supra*, 175 Cal.App.4th at p. 1273.)

While deplorable, White's intervening negligence was neither "highly unusual" nor "extraordinary." The reason for holding vendors liable for negligently loading and securing cargo in a vehicle is precisely because a poorly done job can distract the vehicle's driver. Moreover, it is not uncommon for drivers to be negligent, even intoxicated. (E.g., *Bloomberg*, *supra*, 162 Cal.App.3d at pp. 576-577.) In similar

circumstances, courts have repeatedly refused to deem the third party's intervening negligence a superseding cause. (See *Jackson*, *supra*, 16 Cal.App.4th at pp. 1847-1852 [intervening negligence of driver hitting plaintiff stranded on roadside due to defendant's negligence not a superseding cause]; *Bloomberg*, *supra*, at pp. 576-577 [same].)

The cases Bert's cites are not to the contrary. *Arthur* deals with cause-in-fact, not superseding cause. (*Arthur*, *supra*, 183 Cal.App.2d at pp. 487-488.) *Whitton v. State of California* (1979) 98 Cal.App.3d 235, upheld a jury's finding that a CHP officer did not act negligently in selecting where to pull over a motorist who was subsequently hit by a drunk driver. (*Id.*, at pp. 242-244.) This is a "question of *breach*" (*Cabral*, *supra*, 51 Cal.4th at p. 776), not causation. Lastly, the court in *Schrimscher v. Bryson* (1976) 58 Cal.App.3d 660, refused to hold a drunk motorist liable for injuries a CHP officer suffered when a second drunk driver hit the officer while on the roadside. (*Id.*, at pp. 664-665.) The court reasoned that "frequent[]" exposure to such roadside risks was part of the officer's "primary duties," such that imposing liability on the many motorists he stops would constitute an "unwarranted extension of liability." (*Id.*, at p. 665.) These cases cast no doubt on our conclusion that a driver's negligence is well within the universe of risks that a vendor undertaking to load and secure cargo should foresee. Such negligence is not a superseding cause as a matter of law.

III. *The Trial Court Erred In Admitting the Toxicologist's Opinion that White Was Not Likely Impaired By Marijuana*

Bert's argues that the trial court abused its discretion in (1) ruling, under Evidence Code section 352, that Bert's could not cross-examine plaintiffs' toxicologist regarding the other drugs found in White's bloodstream soon after the accident; and (2) refusing to strike the toxicologist's opinion that White was a "chronic" user of marijuana and thus likely unimpaired at the time of the accident. (*People v. Clark* (2011) 52 Cal.4th 856, 893 [Evid. Code, § 352 rulings reviewed for abuse of discretion]; *Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1523 [foundation for expert testimony reviewed for abuse of discretion].)

15

The trial court did not abuse its discretion in prohibiting cross-examination on the potential impairment caused by the other drugs in White's body. The probable effect of intoxicants other than alcohol is a topic "sufficiently beyond [the] common experience" of most jurors that expert testimony is required. (Evid. Code, § 801, subd. (a); *People v. Cox* (1990) 221 Cal.App.3d 980, 989; *People v. Balderas* (1985) 41 Cal.3d 144, 191-192, superseded on other grounds by Civ. Proc. Code, § 223.) Bert's elected not to call a toxicologist of its own to explain whether these other drugs were in sufficient concentrations to impair White. Further, given plaintiffs' toxicologist's statements during his pretrial deposition that the "data available" did not permit *him* to opine on whether the other drugs impaired White, Bert's also could not rely on plaintiff's toxicologist to render an opinion. Given this absence of a proper foundation, the trial court was well within its discretion to conclude that the probative value of any evidence on this topic was substantially outweighed by the danger of misleading the jury or confusing the issue.

The trial court abused its discretion in allowing the jury to consider the toxicologist's opinion that White was a "chronic" marijuana user and hence unlikely to have been impaired by the prodigious amount of marijuana he consumed in the 24 hours leading up to the accident. The toxicologist defined a "chronic" user as a person (1) who used marijuana "for a long period of time"; and (2) who regularly drives while using marijuana. The toxicologist merely "assumed" that each prerequisite was true. He acknowledged, however, that his opinion would change if his assumptions were unfounded and that a non-chronic user would be impaired by the quantity of marijuana White had consumed. ""... Where an expert bases his conclusions upon assumptions which are not supported by the record, ... his conclusion has no evidentiary value"" and should be excluded. (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 128, 1311; *White v. State of Cal.* (1971) 21 Cal.App.3d 738, 760; *People v. Gardeley* (1996) 14 Cal.4th 605, 618.)

The evidentiary basis for the toxicologist's first assumption is, as the trial court found, "thin"; for the second assumption, it is entirely absent. In validating his assumption that White was a long-term user of marijuana, the toxicologist pointed to two

16

pieces of evidence—namely, White's possession of a medical marijuana card for seven months prior to the accident, and the "quite high" levels of marijuana by-products in White's bloodstream. White's marijuana card ostensibly lends some support to the inference of long-term use (but says nothing about heavy use). The "high levels" of marijuana do not indicate long-term use because, as the toxicologist acknowledged, they reflect use in the days immediately prior to the accident. The toxicologist opined that this recent, heavy use could be equated with longer-term use, reasoning that heavy users are chronic users because chronic users are heavy users. This reasoning appears to be circular.

Even accepting that this first assumption had some evidentiary foundation, plaintiffs adduced no evidence to support the second assumption underlying the toxicologist's opinion—namely, that White had repeatedly driven while using marijuana so as to no longer be impaired while doing so. The trial court's ruling was silent on this point. No evidence supports this assumption. To be sure, the evidence shows that White drove with marijuana in his system on the day of the accident in this case. But this is not evidence of repeated driving while using marijuana. In fact, White stated that he does *not* otherwise drive while using marijuana. Although a trial court enjoys broad discretion, that discretion "must be exercised within the limits the law permits" (*Sargon Enterprises, Inc. v. University of So. Calif.* (2012) 55 Cal.4th 747, 773), and the law does not permit an expert opinion unconnected to the evidence in a case.

This error was prejudicial because the apportionment of liability between Bert's and White was a close question. Although there was evidence that White was also negligent for taking his eyes away from the road for too long, a critical, linchpin issue in assigning fault was whether White's marijuana binge impaired his driving. This is undoubtedly why plaintiffs' counsel repeatedly touted in closing argument the toxicologist's opinion that White was not impaired.

Plaintiffs (and White) offer four arguments to downplay the significance and impact of the toxicologist's opinion. First, they note that his opinion was very narrow and heavily qualified because he admitted that his opinion rested on assumptions, and

17

that his opinion was only as good as those assumptions. But that is precisely the point. It is because one of those assumptions is invalid that the expert's subsequent opinions that White was "most likely" a "chronic" user, and there was "no reason to think" otherwise, were prejudicial.

Second, plaintiffs reason that the jury's allocation of 67 percent of the liability to White is proof that it rejected the toxicologist's opinion regarding White's non-impairment. We disagree. Because the jury was presented with other evidence of White's negligence such as his failure to keep his eyes on the road, the jury's decision to assign fault to White cannot be equated with a rejection of toxicologist's opinion. The jury's assignment of fault to White also means that it did not fully credit the opinion of plaintiffs' human factors expert that White's reaction was no different than a sober person's. More to the point, because the opinion was central to the issues and repeatedly emphasized by plaintiffs, it is reasonably probable that the opinion played a substantial role in the jury's decision of what percentage of liability to assign to White.

Third, plaintiffs contend that the jury heard other evidence of White's impairment because it heard he was convicted of involuntary manslaughter while intoxicated. The significance of the conviction was undercut by the toxicologist's testimony that being "under the influence" was different from being "impaired." Thus, the brief reference to White's conviction without any explanation of its elements or factual basis did not do much, if anything, to obviate the otherwise significant impact of the expert's lengthy testimony regarding White's lack of "impairment."

Lastly, plaintiffs note that Bert's argued in closing that White's level of impairment did not matter because White could be found negligent for other reasons. However, Bert's resort to an alternative argument in favor of its position in light of the trial court's ruling refusing to strike the toxicologist's opinion is a reasonable defensive tactic—not a concession of the opinion's insignificance.

We therefore conclude that there is a "reasonable probability" that the jury's liability verdict was affected by the erroneous admission of the toxicologist's opinion that

18

White was a "chronic" user who was unlikely to be impaired at the time of the accident. (*People v.* Watson (1956) 46 Cal.2d 818, 836.)

<em>DISPOSITION</em>

The judgment is vacated, and the cause remanded for a new trial.

The parties shall bear their own costs.

<u>CERTIFIED FOR PUBLICATION.</u>

HOFFSTADT, J.[*]

We concur:

CHANEY, A. P. J.

JOHNSON, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)