[No. B196403. Second Dist., Div. Three. Dec. 7, 2007.]

RAVEN H., Plaintiff and Appellant, v.
LINDA GAMETTE, as Personal Representative, etc., Defendant and
Respondent.

## COUNSEL

A. Liberatore, Anthony A. Liberatore; and David J. Ozeran for Plaintiff and Appellant.

Michael Maguire & Associates and Kathryn Alberian for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—In this action based on the alleged negligence of a landowner in the maintenance of residential property, plaintiff Raven H. (plaintiff) appeals from a summary judgment granted in favor of defendant Linda Gamette (defendant). Defendant is the personal representative of the decedent, Douglas Gamette II (decedent), who was plaintiff's landlord.

Plaintiff's complaint alleges that while she was a tenant in an apartment complex owned by the decedent, she was sexually assaulted by a man who broke into her apartment through an unsecured window, and although the decedent was allegedly aware that violent crimes of various kinds had been committed at or near his premises by criminals who had gained access to victims' apartments by breaking into them, he failed to take adequate precautions to secure plaintiff's safety in her apartment and such failure constituted negligence and was the cause of plaintiff's injuries resulting from the attack on her.

Although defendant's motion for summary judgment specifically did not concede that the decedent had owed or breached any duty to plaintiff, those elements of plaintiff's cause of action were not specifically addressed in the motion. Rather, the defendant's motion was directed at the issue of causation. Defendant contended that plaintiff could not prove that element of her negligence claim. In granting defendant's motion, the trial court found that plaintiff had "failed to submit admissible evidence *establishing* a causal link between her injuries . . . and . . . decedent's alleged breach of duty [and t]hus, plaintiff failed to *establish* the element of causation" (italics added) in her cause of action for negligence.

In order to defeat defendant's summary judgment motion, plaintiff only needed to raise a triable issue of material fact as to the issue of causation; she did not need to *establish* that element of her negligence cause of action. We conclude that there is such a triable issue, namely, whether the condition of the apartment complex on the night plaintiff was attacked was a substantial factor in causing her injuries. We will therefore reverse the judgment and remand this case for further proceedings.

Because the duty and breach elements of plaintiff's negligence cause of action were essentially assumed to be present for purposes of argument on the causation issue, they will be a matter for the trial court in the first instance on remand of this case. We hold only that plaintiff's claim cannot be disposed of by summary judgment since unresolved issues of fact remain as to causation.

## *FACTUAL BACKGROUND*

### 1. *Plaintiff's Allegations*

Plaintiff's complaint alleges the following. The subject apartment complex where plaintiff was attacked is located at 910–914 North Victor Avenue in the City of Inglewood, California, and the decedent owned, operated, maintained and controlled the apartment complex premises. When plaintiff was attacked she was a paying tenant living in apartment No. 4 in the 914 building. The attack occurred on August 14, 2003, at approximately 5:00 a.m. Plaintiff was brutally raped "by a man who broke into [her] apartment through an unsecured and easily accessible first floor window."[1]

Plaintiff's complaint further alleges that, prior to August 14, 2003, (1) decedent was notified and was aware that other tenants in the apartment

---

[1] Plaintiff's attacker was eventually caught, tried and convicted of the crime.

complex, as well as other individuals in the area, had been the victims of break-ins, burglary, robbery, assault, battery, sexual assault and other crimes by perpetrators who broke into apartments "using similar methods"; (2) decedent's awareness of such crimes is demonstrated by the fact that "bars were maintained on some of the apartments of the complex," and by decedent's use of an electronic gate and a fence to enclose the complex; (3) despite decedent's awareness of such crimes and the need to take precautions, prior to August 14, 2003, he failed to secure easily accessible windows in apartments in the complex, failed to maintain an adequate security gate and related fencing, and failed to maintain or include other necessary security measures; (4) the windows in plaintiff's apartment were not secured despite the fact that her apartment was located on the lower level of the complex, and despite the fact that windows in other lower level apartments and in upper level apartments were secured with bars; and (5) although decedent was aware of the danger at the apartment complex and at nearby apartment complexes, he failed to warn his tenants of such criminal activity. Regarding causation, plaintiff alleged that the assault on her in her apartment was a proximate result of decedent's negligence and it resulted in serious injury to her physical, emotional and mental health.

### 2. Layout of the Apartment Complex

The record reflects that the decedent's apartment complex consists of two two-story buildings, 910 and 914 North Victor Avenue. Plaintiff lived in the 914 building. Running between the buildings is a driveway that extends from North Victor Avenue to the back of the property where tenants park their cars. There is a wrought iron gate across the driveway to prevent access to the driveway by unauthorized persons. It is opened and closed with a garage-door-type opener. That gate was working at the time plaintiff was attacked. Next to the driveway gate is a locking pedestrian door for foot traffic in and out of the grounds. It can be opened from the tenants' apartments using a buzzer that operates off of the telephone system. Tenants also have keys to open the pedestrian door. Additionally, there is a wrought iron gate on the each of the far sides of the front of the complex. Such gates finish off the front of the lot in terms of barriers between the complex and North Victor Avenue. The two sides of the complex (and apparently also the back of the complex) have fences or walls separating the apartment complex from adjoining property. At least one of the walls is low enough to allow easy access from the lot on the other side of it. The sides and rear of the complex lot abut other residential lots. The apartment occupied by plaintiff is in the middle of building number 914 as it runs along the driveway, on the first floor, and the kitchen/dining room and living room windows in the apartment face the driveway.

### 3. *Defendant's Summary Judgment Position*

Defendant's motion for summary judgment was based on defendant's claim that plaintiff presented no evidence (and could not present such evidence) to establish that the decedent's conduct was a cause of plaintiff's injuries. While not conceding that the decedent owed plaintiff any duty or had breached any duty, defendant argued that "[b]ecause plaintiff does not know how her assailant gained access to the apartment complex, plaintiff cannot prove the causation element of her negligence claim." Defendant relied on *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*) and (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472 [50 Cal.Rptr.2d 785] (*Leslie G.*) to support that position.

At her deposition, plaintiff testified she lived in the apartment complex from May 2003 to September 2004. During that time, her apartment had a locking wrought iron screen door in addition to the wooden apartment door. When she went to sleep on the night of August 13, 2003, she left all of the windows in her apartment open all the way. Her front doors (wooden and wrought iron) were closed and locked. She left the windows open because the apartment was hot and it did not have air conditioning.

At approximately 5:00 a.m. on August 14, 2003, plaintiff was raped in her apartment by an unknown person who was later caught and identified as one Jerome Green. Green entered her apartment through a window in the dining area of the apartment after first removing a screen that was on the window. He was not a tenant at the apartment complex and plaintiff admitted she does not know how he came to be there.

### 4. *The Trial Court's Analysis of the Summary Judgment Motion*

The trial court observed that the focus of the summary judgment motion was not the alleged breaches of landlord responsibility but rather whether such breaches caused plaintiff's injuries. Citing the *Saelzler* court's analysis of causation in third party criminal assault negligence cases, the court found that the cause of plaintiff's injuries was plaintiff leaving her windows open and thus there was no causal link between decedent's asserted breaches of duty and plaintiff's injuries. On that basis, the motion for summary judgment was granted.

## DISCUSSION

### 1. *Standards of Review*

We review, on a de novo basis, the order granting defendant's motion for summary judgment. (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465,

474 [261 Cal.Rptr. 735].) In doing so, we apply the same rules the trial court was required to apply in deciding the motion. When the defendant is the moving party, it has the burden of demonstrating as a matter of law, with respect to each of the plaintiff's causes of action, that one or more elements of the cause of action cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)[2]

If a defendant's presentation in its moving papers will support a finding in its favor on one or more elements of the cause of action, or on a defense thereto, the burden shifts to the plaintiff to present evidence showing that contrary to the defendant's presentation, a triable issue of material fact actually exists as to those elements or the defense. (§ 437c, subd. (p)(2).) That is, the plaintiff must present evidence that has the effect of disputing the evidence proffered by the defendant on some material fact. Thus, section 437c, subdivision (c), states that summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Because a summary judgment denies the adversary party a trial, it should be granted with caution. (*Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 865 [247 Cal.Rptr. 504].) Declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party. The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or inferences reasonably deducible from the evidence, which raise a triable issue of material fact. (*Id.* at pp. 865–866.) If, in deciding this appeal, we find there is no issue of material fact, we affirm the summary judgment if it is correct on any legal ground applicable to this case, whether that ground was the legal theory adopted by the trial court or not, and whether it was raised by defendant in the trial court, or first addressed on appeal. (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].) If, on the other hand, we find that one or more triable issues of material fact exist, we must reverse the summary judgment.

### 2. *The Motion for Summary Judgment Should Have Been Denied*

#### a. *Elements of a Cause of Action for Negligence*

██ "Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the . . . legal cause of the resulting

---

[2] Unless otherwise indicated, all references herein to statutes are to the Code of Civil Procedure.

injury." (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. [¶] A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation." (Judicial Council of Cal. Civ. Jury Instns. (2007) CACI No. 401.)[3]

### b. *The Causation Element*

It may be that more than one person's negligence, including the plaintiff's, has been a substantial factor in causing a plaintiff's injuries. (CACI No. 406.) "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." (CACI No. 430.)

If a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm. Such defendant cannot avoid responsibility because some other person, or condition or event was also a substantial factor in causing the harm. (CACI No. 431.)

For purposes of causation, if "a defendant's negligence is a concurring cause of an injury, the law regards it as a legal cause of the injury, regardless of the extent to which it contributes to the injury." (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1317–1318 [37 Cal.Rptr.2d 541], italics & fn. omitted.)

"Fault is . . . dependent upon legal cause. For there to be comparative fault there must be more than one contributory or concurrent legal cause of the injury for which recompense is sought." (*Doupnik v. General Motors Corp.* (1990) 225 Cal.App.3d 849, 866 [275 Cal.Rptr. 715].) Here, plaintiff contends that the case presents an issue as to which, if any, of the conditions of the apartment complex on the night she was attacked, including her open windows, contributed to her injuries.

---

[3] All CACI instructions referred to herein are from the 2007 edition.

c. *Analysis of Causation in the Instant Case*

As noted, defendant's motion for summary judgment was based on the claim that plaintiff lacked evidence to establish that the decedent's conduct was the cause of plaintiff's injuries because plaintiff did not know how her attacker gained access to the apartment complex, and thus plaintiff could not show that it was a failure on the decedent's part to keep the attacker off the premises that caused plaintiff's injury. Defendant relied on *Saelzler, supra*, 25 Cal.4th 763, and *Leslie G., supra*, 43 Cal.App.4th 472.

In *Saelzler* and *Leslie G.*, the plaintiffs were assaulted while on apartment complex premises. They asserted there was negligence in allowing their attackers access to the grounds. The reviewing courts held that the plaintiffs had produced no evidence showing that their attackers were on the grounds because of lax security measures. For example, the attackers might have been tenants, or they might have been invited to the apartment complexes by tenants. Thus, said the courts, the plaintiffs did not meet their burden of producing evidence on the element of causation. In *Saelzler,* the court also held the plaintiff did not present evidence showing that additional security guards could have prevented her attack. Here, as noted above, the trial court relied on *Saelzler* and ruled that the cause of plaintiff's injuries was plaintiff leaving her windows open and thus there could be no causal link between the decedent's asserted breaches of duty and the injuries. In our view, however, there are significant differences between the criminal incidents in *Saelzler* and *Leslie G.*, and the criminal incident in the instant case.

First, there is more evidence here that the steps taken to keep unauthorized persons out of the complex may not have been sufficient and might be found to be a substantial factor in causing plaintiff's injuries. Although plaintiff does not know how her attacker came to be on the premises on the night he assaulted her, he was eventually caught and thus it became known that he was not a tenant who was entitled to be at the apartment complex. Also, there is apparently no evidence of forced entry into the complex. Further, the apartment manager, Nathaniel Franklin, acknowledged that tenants sometimes leave the pedestrian gate propped open at night to permit access in and out of the complex for persons who do not live there, and plaintiff was assaulted at night. Indeed, there is evidence that the pedestrian gate and the car gate were *frequently* left unlocked or did not work, and the side gates did not lock until after plaintiff was assaulted. Franklin's method of dealing with the "open gate" problem was limited to giving offending tenants a written notice saying if they were caught again leaving a gate propped open they would be evicted. Additionally, at least one side of the premises has a wall that is short enough

to permit people to climb over it at any time. Mr. Franklin stated at his deposition that although he "put the gate up to keep the traffic out, . . . now I should have gated the whole place in, it seems like." The complex is in an area where people have taken advantage of opportunities for criminal activity, as shown by Mr. Franklin's testimony that before the vehicle gate was in place, there were shootings and break-ins to tenant's vehicles in the parking area of the complex.[4] These accumulated facts, if established at trial, are sufficient to support a reasonable inference that the decedent's actions (and/or those of his agent Mr. Franklin) failed to make the premises reasonably safe for the tenants and were a substantial factor in causing plaintiff's assault injuries.

Second, plaintiff argues that the causation issue involves not only how her attacker gained entry to the complex premises, it also involves plaintiff's position that her assailant was able to gain access *to her apartment* because the decedent or Mr. Franklin (1) did not provide her with locks that would have permitted her to open her windows a safe amount so that cool air could come into her apartment but her attacker could not,[5] (2) did not provide security bars on her windows,[6] (3) did not advise her that there had been break-ins into her apartment and the corresponding apartment in building number 910, which knowledge would have caused her to not rent the apartment, or if she had been so informed after she moved in, would have caused her to refrain from leaving her windows open,[7,8] and (4) failed to keep the vegetation at her windows trimmed back and keep the lighting in

---

[4] The record reflects that there is additional admissible evidence that plaintiff may be able to obtain by appropriate discovery. It includes evidence indicating a prior break-in into plaintiff's apartment (before she moved in) as well as a break-in into the apartment that is situated across the driveway from hers in the 910 North Victor Avenue building.

[5] At his deposition, apartment manager Franklin testified that he did provide plaintiff with the type of locks that screw onto a window and permit the window to be opened as far as a tenant wants it to be open but no farther, and he installed those special locks himself on plaintiff's windows.

[6] Plaintiff testified that none of the windows in her apartment had security bars on them. Of the six or seven units on the first floor of the 914 building where plaintiff lived, only apartment No. 1 had security bars on its windows. That is the unit closest to North Victor Avenue. The bars were there when plaintiff moved to the complex.

[7] Franklin stated that since he's been at the complex, no tenant has ever reported to him that he or she was burglarized, and he denied that there had been any burglaries there.

[8] We do not find a significant difference between the asserted prior crimes at the complex being burglaries and the instant crime being a rape. To begin with, plaintiff's complaint alleged there had previously been sexual assaults in the area of the apartment complex. Moreover, the importance of the alleged breach of the decedent's duty of care is that he did not take precautions *to prevent someone from entering plaintiff's apartment.* It should make no difference in the law of negligence whether the precautions would have prevented a burglary or a rape.

front of her apartment turned on, so that her attacker would not have the cover of darkness and vegetation to enter her apartment.[9] Thus, her argument goes, even if her assailant was on the premises by permission of one of her fellow tenants, that would not prevent the omissions of the decedent or Franklin from being a substantial factor in causing plaintiff's injuries.

Plaintiff's position is essentially that she was not provided with the very security measures *that other tenants already had*—special locks for her windows that allow the windows to be open a safe amount, sufficient lighting outside her apartment, knowledge of the asserted prior break-ins, windows that were not covered over by vegetation (second floor tenants had no vegetation issues), and security bars on her windows—and the failure to provide her with such security measures was a substantial factor in her being attacked. In that respect, she is not arguing for *increased* security measures for the entire complex, such as security personnel, as did the plaintiff in *Saelzler, supra*, 25 Cal.4th at pages 776, 781.

Defendant argues there is no evidence that ties the asserted overgrown vegetation and burned-out light to the assault on plaintiff, no evidence that the rape would not have occurred if the vegetation had been trimmed back and the light were on. However, we cannot say that a jury could not reasonably find that the absence of the various security measures operated together to facilitate the attack. That is, the lack of bars on the windows or locks to keep the windows open only a little resulted in the ability of the attacker to enter plaintiff's apartment through the windows, and the ability to crawl through the window without being seen from the common area was facilitated by the vegetation and lack of lighting. A jury could find that plaintiff's leaving the window open and the alleged breaches of duty on the part of defendant or Mr. Franklin were *both* substantial factors in causing the attack on plaintiff. Such a conclusion might well justify the application of the principle of comparative negligence, but would not justify the outright rejection of plaintiff's claim.

■ In *Saelzler*, the court stated it may not be necessary for a plaintiff to produce testimony from a criminal as to what " 'specific lack of deterrence on the property made easier his or her opportunity to commit the crime.' "

---

[9] There was evidence that on the day that plaintiff was attacked, the vegetation in front of her kitchen/dining room and living room windows was so thick that only the top of the window frames could be seen. Plaintiff described the vegetation as wide, tall, and overgrown. After plaintiff was attacked, manager Franklin trimmed the vegetation so that the kitchen, dining room and living room windows were totally visible.

For purposes of its summary judgment motion, defendant did not dispute that the light bulb in front of plaintiff's apartment was burned out, and defendant admitted that the vegetation in front of plaintiff's windows was overgrown to the point that you could not see the windows if you stood in the driveway and looked for them.

(*Saelzler, supra,* 25 Cal.4th at p. 779.) We do not find it necessary that plaintiff have a statement from her assailant to the effect that but for the absence of bars or special locks on the windows, he would not have entered her apartment. A jury could find, without speculating, that if there had been bars on the windows or locks preventing the windows from being opened sufficiently to permit a person to crawl through them, the attacker would not have crawled through the window. The only other potential means of entry was a locked door. In *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 436 [20 Cal.Rptr.2d 97] (*Nola M.*), the court stated: "When an injury can be prevented by a lock or a fence or a chain across a driveway or some other physical device, a landowner's failure to erect an appropriate barrier can be the legal cause of an injury inflicted by the negligent or criminal act of a third person."

*Nola M.* is also instructive on the matter of the asserted overgrown vegetation and burned-out lighting in this case. In *Nola M.*, the plaintiff was attacked and raped on the defendant's campus. At trial, plaintiff's expert testified that dense, high foliage, inadequate lighting and inadequate security were substantial factors in causing the attack. (*Nola M., supra,* 16 Cal.App.4th at pp. 425, 436, fn. 8.) However, the reviewing court observed that (1) the plaintiff testified her assailant grabbed her from behind, and (2) there was no evidence that he had been lurking in the shadows or behind the foliage. Thus, said the court, low lights and high bushes were not material on the issue of causation. (*Id.* at pp. 435–436.) That is not the situation here. It is clear that the very window the rapist chose to access plaintiff's apartment is one that was hidden from view by vegetation. Moreover, plaintiff stated in her declaration that when the light bulb in front of her apartment is burned out, the area around her kitchen, dining room and living room windows is extremely dark.

"Whether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the jury [citation]." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252 [7 Cal.Rptr.2d 101].) "[C]ausation in fact is ultimately a matter of probability and common sense: '[A plaintiff] is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable [persons] may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no [person] can say with absolute certainty what would have occurred if the defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact

followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.' (Rest.2d Torts, § 433B, com. b.)" (*Id.* at p. 253.) Those observations are in keeping with the causation analysis expressed in *Saelzler*: " 'A mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' (Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted . . . .)" (*Saelzler, supra,* 25 Cal.4th at pp. 775–776, italics omitted.)

■ In *Landeros v. Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389], the court addressed those situations where criminal activity against a plaintiff follows the defendant's alleged negligence; that is, when an intervening act by a criminal constitutes the immediate cause in fact of the plaintiff's injuries for which the plaintiff seeks to recover against the defendant. The *Landeros* court said: "It is well settled in this state . . . that an intervening act does not amount to a 'superseding cause' relieving the negligent defendant of liability . . . if it was reasonably foreseeable: '[A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct.' [Citation.] Moreover, under section 449 of the Restatement Second of Torts that foreseeability may arise directly from the risk created by the original act of negligence: 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, *or criminal* does not prevent the actor from being liable for harm caused thereby.' (Italics added.) [Citation.]" (*Id.* at p. 411.)

■ Bearing in mind that we address only the issue of causation,[10] we conclude that there are triable issues of material fact regarding whether the decedent's and Mr. Franklin's efforts to keep unauthorized persons out of the apartment complex, and their allegedly not providing plaintiff with security devices provided to other tenants, were substantial factors in causing plaintiff's injuries.

---

[10] As already indicated, for purposes of this opinion, we have necessarily assumed the existence of a duty and its breach by decedent. Whether or not either or both can be in fact be established is a matter that the trial court will have to resolve upon remand.

## *DISPOSITION*

The summary judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Plaintiff shall recover her costs.

Klein, P. J., and Aldrich, J., concurred.