Filed 7/16/13  Neiman v. Motel 6 Operating L.P. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PHILLIP NEIMAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MOTEL 6 OPERATING L.P., <br><br> Defendant and Respondent. | F064476 <br><br> (Fresno Super. Ct. No. 10CECG01165) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Bruce M. Smith, Judge.

Miller & Ayala and Nathan S. Miller for Plaintiffs and Appellants.

Farmer Case Hack & Fedor, Farmer Case & Fedor, John M. Fedor and Keith S. Ciceron for Defendant and Respondent.

-ooOoo-

## INTRODUCTION

Appellant/plaintiff Phillip Neiman (plaintiff), sued respondent/defendant Motel 6 (defendant)[1] for personal injuries he suffered in an attack by a third party assailant in his motel room.[2] Plaintiff alleged that defendant's lack of security was the legal cause of his injuries. The trial court granted summary judgment, determining that defendant owed plaintiff no duty to hire security guards or install security cameras because no sufficiently similar prior incidents had occurred on defendant's premises. While we question the trial court's ruling, we do not definitively resolve the issues of foreseeability and duty. Instead, we hold that plaintiff failed to raise a triable issue of material on the element of causation. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763 (*Saelzler*).) We therefore affirm, albeit on different grounds than cited by the trial court. (See Code Civ. Proc., § 437c, subd. (m)(2).)[3]

## BACKGROUND

On July 16, 2009, plaintiff returned to Motel 6 after getting breakfast.[4] Plaintiff exited his vehicle and a man named Leroy Johnson (Johnson) walked toward him. Johnson did not display a threatening manner, and plaintiff did not consider him a threat. Plaintiff and Johnson commented on the weather as they walked toward each other. Johnson eventually began walking approximately 10 feet behind plaintiff. As plaintiff

---

[1] Plaintiff's original and amended complaints name "Motel 6" as defendant. Motel 6 Operating L.P. answered the original complaint as "Motel 6 Operating L.P. (erroneously sued as 'Motel 6')."

[2] Plaintiff initially sued Accord Lodging North America, but subsequently dismissed that party without prejudice.

[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[4] The facts in this paragraph are taken from defendant's Separate Statement of Undisputed Material Facts 8-13; 15-17 & 20, all listed as "undisputed" by plaintiff. The assailant's first name is the only fact taken from elsewhere in the record.

reached the door of his room, Johnson told him it was a robbery and told plaintiff to open the door. Plaintiff believed Johnson was holding a gun concealed in his shirt (but never saw a gun), and opened the door to the room. Once inside the room, Johnson demanded plaintiff's money and eventually beat him.

Plaintiff's complaint alleges that he sustained severe injuries requiring more than 500 stitches when assailant beat plaintiff with a towel rack, slashed his throat with a broken piece of tile, and "partially" cut off his finger. Plaintiff further averred that the attack occurred because defendant failed to provide security, and that video surveillance "would have had the effect of detouring [*sic*] the attacker."

### The "Duty Motion"

Defendant moved for summary judgment on the grounds that it owed no tort duty to protect plaintiff from the criminal acts of third parties (the "duty motion"). The hearing was initially noticed for August 11, 2011. The court continued the summary judgment hearing on the basis that facts essential to justify opposition to the motion may exist but could not be presented at that time. (§ 437c, subd. (h).) The court's order permitted the parties to submit a supplemental opposition and a supplemental reply. Plaintiff filed a supplemental opposition on November 22, 2011, and the hearing was ultimately held on December 21-22, 2011.

In opposition to the duty motion, plaintiff argued that prior incidents had occurred at or near the Motel 6 that were sufficiently similar to the attack on plaintiff. This, plaintiff argued, made the attack on him foreseeable and created a duty to provide security under *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 (*Ann M.*), disapproved on other grounds by *Reid v. Google* (2010) 50 Cal.4th 512 and its progeny.

### Alleged Prior Incidents

In a supplemental opposition, plaintiff cited three alleged prior incidents.

First, on July 2, 2008, a transient hit a motel guest named Douglas Dale Parks with a wine bottle (the "Parks incident").  A couple days prior, the victim had seen the same transient break a wine bottle on the ground and then "scream[]" at the shattered pieces.

Second, plaintiff offered the deposition testimony of an Officer Garcia who recounted what victim Jose Zavala told him about an alleged prior incident.  Two individuals entered the victim's room under false pretenses.  One of the individuals had a firearm.  They tied up the two victims with bed sheets and stole a DVD player and a wallet from the room (the "Zavala incident").

Third, Jessica Hinojosa described a prior incident at defendant's premises in a declaration.  At approximately 2:30 a.m. on the morning of June 6, 2006, Hinojosa and another female were in their motel room when they heard a knock at the door.  The man at the door asked to use their telephone.  Hinojosa opened the door, and the man tried to push the door.  Hinojosa and her friend attempted to force the door closed.  While he was trying to force the door open, the man pulled out a gun, pointed it at Hinojosa and told her and her friend to lie on the bed.  Two other men entered the room.  One of the men struck Hinojosa on her face.  The men used bed sheets to tie up the girls and left them in the bathroom.  When the girls exited the bathroom, they discovered that the men had left and had stolen their belongings (the "Hinojosa incident").

Plaintiff also offered other evidence of criminal activity at or near the defendant's premises.  Officers testified that prostitution, drug dealing and gang activity were present at and near the Motel 6.  Plaintiff introduced Fresno Police Department call logs, which contained 348 entries pertaining to defendant's motel.

### The "Causation Motion"

Prior to the date of the continued hearing on the initial summary judgment motion, Defendant filed another motion for summary judgment.  This second motion was made on the grounds that defendant's alleged negligence was not the legal cause of plaintiff's

injuries (the "causation motion"). The motion was noticed for the same hearing date as the duty motion.

### The Trial Court's Ruling

The trial court granted the duty motion, finding that the prior incidents were not sufficiently similar to the attack on plaintiff to create a duty. The trial court did not rule on defendant's evidentiary objections, "because even assuming all of Plaintiff's proffered evidence is admissible, it still fails to establish foreseeability and duty." The trial court deemed the causation motion "moot" and did not rule on it. Plaintiff appeals from the ensuing judgment.

### ANALYSIS

We review the grant of summary judgment de novo. (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1231 (*Rey*).)[5] "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact." (*Hutton v. Fidelity National Title Company* (2013) 213 Cal.App.4th 486, 493-494.) Throughout this process we look to the record before the trial court, liberally construing evidence in support of the party opposing summary judgment. (*Rey*, *supra*, 203 Cal.App.4th at p. 1231.)

---

[5] Plaintiff argues in his brief that the lower court's grant of summary judgment was "an abuse of discretion." To support this contention, plaintiff cites statements made by the trial court which, in plaintiff's estimation, indicate an error of law. We do not review a summary judgment under the abuse of discretion standard. (*Rey*, *supra*, 203 Cal.App.4th at p. 1231.) The trial court's reasoning is irrelevant on appeal. (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

# I.

## DUTY

"It is now well established that California law requires landowners to maintain land in their possession and control in a reasonably safe condition.  In the case of a landlord [or landowner], this general duty of maintenance, which is owed to … patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M.*, *supra*, 6 Cal.4th at p. 674 [citations omitted].)

The issue in this case is not whether the defendant-landowner owes plaintiff any duty, but whether the scope of that duty includes the hiring of security guards or the installation and monitoring of security cameras.  (See *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 280.)

Third party criminal conduct cases have developed a unique foreseeability jurisprudence compared to other tort contexts.  As the California Supreme Court has explained, "our cases analyze third party criminal acts differently from ordinary negligence .…" (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1149 (*Wiener*).)  This departure from standard tort foreseeability analysis is largely a result of the ubiquity of criminal activity in modern society.  As our Supreme Court has observed:  "Unfortunately, random, violent crime is endemic in today's society.  It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (*Ann M.*, *supra*, 6 Cal.4th at p. 678.)  Moreover, "if a criminal decides on a particular goal or victim, it is extremely difficult to remove his every means for achieving that goal." (*Wiener*, *supra*, 32 Cal.4th at p. 1150.)

Therefore, a plaintiff must show "heightened foreseeability" when asserting that a defendant-landowner owed a duty to protect patrons against third party criminal conduct by activating and monitoring security cameras or providing security guards.  (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 243, fn. 24 (*Delgado*).)  The "requisite degree of

foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (*Ann M.*, *supra*, 6 Cal.4th at p. 679, fn. omitted.)

Plaintiff cites a number of prior incidents at the Motel 6, the most compelling of which is the Hinojosa incident. Defendant argued, and the trial court agreed, that the Hinojosa incident was not sufficiently similar to the assault on plaintiff to support foreseeability. We are dubious of this conclusion.

Prior similar criminal incidents need only be *similar*, not *nearly identical*, to establish heightened foreseeability. (*Delgado*, *supra*, 36 Cal.4th at p. 245.) Here, there are significant similarities between the criminal conduct at issue in each incident. Both Hinojosa and plaintiff were subjected to violence during their respective assaults. In each incident, an assailant used the threat of shooting the victim to gain access to their motel room. Both crimes were armed robberies where the assailants stole valuables from the victim (i.e., Hinojosa's "belongings" and plaintiff's $150 in cash). In sum, both the prior and current incidents share the same "operative facts" – they were violent robberies where the perpetrator gained access to the victim's motel room by threatening to shoot the victim.

However, we need not decide this issue conclusively nor address the parties' contentions on the issue of duty, as we affirm on alternate grounds, *post*.

## II.

## CAUSATION

### A.
### CONSIDERATION OF GROUNDS FOR SUMMARY JUDGMENT NOT RELIED UPON BY THE TRIAL COURT

That plaintiff's assault may have been foreseeable is not dispositive. Here, defendant also moved for summary judgment on the issue of causation. Because the trial court granted the duty motion, it deemed the causation motion moot. Nonetheless, we

must consider the issue of causation on appeal in accordance with our duty to uphold summary judgment if it is correct on any ground, regardless of the reasons relied upon by the trial court. (*Montgomery v. Cal Accountants Mutual Ins. Co.* (1998) 61 Cal.App.4th 854, 859.) "We will affirm an order granting summary judgment or summary adjudication if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Securitas Sec. Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.) Thus, even when the trial court does not rule on an argument properly presented in summary judgment proceedings, we may nonetheless consider it on appeal. (*Gordon v. Havasu Palms, Inc.* (2001) 93 Cal.App.4th 244, 255. See also *WRI Opportunity Loans II LLC v. Cooper* (2007) 154 Cal.App.4th 525, 541, fn. 12.)

If the papers show that the moving party is entitled to judgment as a matter of law, and there is no dispute of material fact, issuance of summary judgment is mandatory. (*Saldana v. Globe-Weiss Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1512. See also § 437c, subd. (c).)[6]

Both parties submitted briefs on causation in response to our supplemental briefing letter. (See § 437, subd. (m)(2).)

### B.
### PLAINTIFF DID NOT RAISE A TRIABLE ISSUE OF FACT ON CAUSATION

With respect to causation, plaintiff's first amended complaint alleges that the attack occurred "due to the failure of the Defendant to provide any security,"[7] and that video surveillance would have deterred[8] the attacker.

---

[6] There are two statutory exceptions to this rule. (See Code Civ. Proc. § 437c, subd.(e).)

[7] At oral argument, plaintiff's counsel argued that we should read the term "security" as encompassing a wide array of security measures, not just hiring security guards. However, pleadings must be read as a whole "and each part must be given the meaning it derives from the context wherein it appears." (*Fundin v. Chicago Pneumatic*

8.

In order to raise a dispute of material fact, plaintiff was not required to conclusively prove causation. Instead, he had to produce evidence raising a triable issue on whether there is "some substantial link or nexus between omission and injury." (*Saelzler*, *supra*, 25 Cal.4th at p. 778.) He failed to do so.

On review of summary judgment, we independently determine the legal effect of the evidence and the undisputed facts. (*Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.* (2006) 136 Cal.App.4th 999, 1010, fn. 4; *Jimenez*, *supra*, 130 Cal.App.4th at p. 140.) The undisputed facts conceded by plaintiff establish the following: Plaintiff exited his vehicle and Johnson walked toward him. Johnson did not display a threatening manner and plaintiff did not consider him a threat. Plaintiff and Johnson commented on the weather as they walked toward each other. Johnson was

---

*Tool Co.* (1984) 152 Cal.App.3d 951, 955.) In the next sentence, the complaint alleges that "no staff or security came to the plaintiff's aid." The complaint's use of an anthropomorphic omission (i.e., failing to come to plaintiff's aid) in reference to "security," demonstrates the term is equivalent to "security guards" or "security personnel." [Fn. contd.]

Plaintiff's discovery responses reinforce this conclusion. "To the extent that interrogatories are used to clarify the contentions of the parties, they are an adjunct to the pleadings. Liberal use of interrogatories for the purpose of *clarifying and narrowing* the issues made by the pleadings should be permitted and encouraged by the courts." (*Burke v. Superior Court* (1969) 71 Cal.2d 276, 281 [italics added]. See also, *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 616 [ambiguities in pleadings can be clarified through discovery].) In interrogatory responses, plaintiff stated: "Responding Party believes if there was security on the property the incident would have been prevented or security would have heard the desperate cries for help and rushed to plaintiff's aid."

Moreover, the vague interpretation urged by plaintiff would have no reasonable bounds. Guard towers, retinal scanners and in-depth background checks of all persons entering Motel 6 property are types of "security" under plaintiff's boundless definition. We employ the only reasonable interpretation of the term.

[8] The word used in the amended complaint is "detouring" but we assume this should have read "deterring."

9.

"very friendly" and "very congenial." Johnson eventually began walking approximately 10 feet behind plaintiff. Plaintiff and Johnson continued friendly idle chatter as plaintiff walked towards his room. As plaintiff reached the door of his room, Johnson told him it was a robbery and told plaintiff to open the door. Plaintiff believed Johnson was holding a gun concealed in his shirt, and opened the door to the room. Plaintiff never saw a gun. It took plaintiff less than three seconds to unlock and open the door and enter the room. Once inside the room, Johnson demanded plaintiff's money and eventually beat him. In total, it took plaintiff between 55 to 75 seconds to go from his car to his motel room.

Plaintiff did not dispute these facts. Plaintiff provided no contradictory evidence suggesting that Johnson acted in a manner that would have aroused the suspicions of a security guard or someone monitoring surveillance footage. That is, plaintiff has not made any showing "that roving guards would have … prevented the attack." (*Saelzler*, *supra*, 25 Cal.4th at p. 777.) Because he was opposing a motion for summary judgment, plaintiff needed only to raise a triable issue of material fact on this issue. He failed to do so.

Instead of raising a triable issue of fact on causation by producing evidence of how security guards or cameras would have prevented the *specific* assault that injured *him*,[9]

---

[9] Plaintiff did raise one fact-specific argument. Plaintiff claims that Motel 6 employee, Jackie Stocksill, testified that at approximately 6:15 a.m., she walked past a man "she now believes to be Leroy Johnson." Thus, plaintiff argues, Johnson "was allowed to loiter on the premises for approximately one hour." There are multiple evidentiary problems with this argument, the most concerning of which is plaintiff's mischaracterization of the evidence cited. Ms. Stocksill did not testify that she "now believes" the person she saw was plaintiff's assailant. To the contrary, she testified that she "didn't actually see a face." When directly asked if the person she saw was plaintiff's assailant, she responded: "…I don't know who he was.… [¶] … Like I said, it was pretty far away and I didn't see a face …."

Moreover, plaintiff's assertion in the briefs that Johnson was on the premises "for approximately one hour" further depends on a declaration made by plaintiff that he arrived to the motel between 6:50 a.m. and 7:10 a.m., which contradicts his own

plaintiff offers the speculative allegations contained in his complaint and expert's declaration.

Plaintiff's discovery responses are likewise speculative and devoid of pertinent facts. An interrogatory was posed to plaintiff, requiring he state all facts that supported his contention that security cameras would have prevented the assault. After incorporating preliminary statements and general objections, he responded: "Unfortunately, there was no video surveillance monitoring Defendant's premises which would have had the affect [*sic*] of detouring [*sic*] the attackers [*sic*] and would have likely alerted Motel 6 staff to the dangerous conditions that led to Plaintiff's assault." Instead of citing facts, plaintiff merely restated his conclusory causation allegations. A plaintiff's boilerplate restatement of allegations in response to interrogatories seeking all known facts is prima facie evidence that there is no dispute of material fact regarding causation. (See *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 106-107.)

Plaintiff first attempts to distinguish unfavorable authority by noting that his complaint alleges causation (i.e., that video surveillance, security guards or even "the slightest security measures" would have prevented the attack). As this court has repeatedly held, a plaintiff may not rely on the allegations of his complaint in opposing summary judgment. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1594.) The purpose of the summary judgment procedure is to pierce the allegations of the pleadings to determine whether a viable cause of action exists. (*Craig v. Earl* (1961) 194 Cal.App.2d 652, 655.)

That plaintiff's expert declaration reiterates the complaint's speculative causation allegations does not alter our conclusion. (See *Saelzler*, *supra*, 25 Cal.4th at p. 781.)

---

deposition testimony that he arrived at approximately 6:00-6:05 a.m. "[A] party cannot rely on contradictions in his own testimony to create a triable issue of fact. [Citations]" (*Thompson v. Williams* (1989) 211 Cal.App.3d 566, 573.)

When opposing summary judgment,

" 'It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' Notably, '[p]laintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation or reasoning.' '[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' " (*Andrews*, 138 Cal.App.4th at p. 108 (citations omitted).)

Plaintiff's expert declaration expounds on the unremarkable notion that certain security measures can reduce crime rates generally. But, that is not the showing plaintiff was required to make in opposing summary judgment. Merely extolling the virtues of deterrent measures does not suffice to show that any particular crime would have been prevented. "Again, though one can generalize that increased security patrols probably would have lessened the incidence of crime in the complex, we can never know whether they would have prevented the attack on appellant." (*Saelzler*, *supra*, 25 Cal.App.4th at p. 772, quoting *Saelzler v. Advanced Group 400* (1999) 77 Cal.App.4th 1001, 1017 (dis. opn. of Neal, J.).) Plaintiff needed to raise a triable issue of fact as to whether *this specific crime* would have been prevented by security cameras or guards.

Instead, he offered his expert's speculative conclusions:

"Had Defendant's [*sic*] made even a minimal effort to institute reasonable crime prevention measures at the motel, the robbery and assault on Plaintiff could most certainly have been prevented."[10]

---

[10] Indeed, plaintiff's expert's conclusions are similar to the expert conclusions rejected as speculative by *Saelzler*:

"[Plaintiff's expert] expressed the opinion 'that this attack, assault and battery, and attempted rape on the plaintiff would not have occurred had there been daytime security and a more concerted effort to keep the gates repaired and closed.... It is my opinion that the premises were a haven for gangsters and hoodlums which further encouraged criminal activity as evidence [*sic*] by the long

The declaration provides no factual basis for this assertion. Not all crimes are preventable. "No one can reasonably contend that even a significant increase in police personnel will prevent all crime or any particular crime." (*Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 918 (*Noble*).) As our high court has stated, " 'surveillance cameras do not deter all crime,' " (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1198,[11] and "assaults … can occur despite the maintenance of the highest level of security." (*Saelzler*, *supra*, 25 Cal.4th at p. 777.) It is a non sequitur to conclude that because some security measures prevent some crimes, therefore "any security" would have prevented *this* crime. That is why these types of bare assertions are insufficient to raise a triable issue of fact on causation. Rather, a plaintiff must raise a triable issue of fact through non-speculative evidence that the absence of specific security measures "caused, or substantially contributed to" the specific incident at issue.[12] (Cf. *id.* at p. 780.)

In sum, "[t]he evidence at hand … merely shows the speculative possibility that additional daytime security guards … might have prevented the assault. Plaintiff's evidence is no less speculative because []he offered a security expert's testimony." (*Saelzler*, *supra*, 25 Cal.4th at p. 781.)

_____

history of criminal activity in the only one year prior to this incident.' " (*Saelzler*, *supra*, 25 Cal.4th at p. 771.)

[11] Disapproved on other grounds in *Reid v. Google*, *supra*, 21 Cal.4th 512.

[12] This is not an easy task. " '[I]t is one thing for an expert to testify concerning the mechanical devices such as locks, safes, fences, etc. which are designed to protect property by "hardening the target," it is quite another for such expert to discuss deterring conduct such as rape, *robbery* or *physical assaults*. … " 'It is an easy matter to know whether a stairway is defective and what repairs will put it in order ... but how can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic?' " ' " (*Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 430 (italics added).)

## C.
## BREACH OF DUTY AND CAUSATION ARE SEPARATE ELEMENTS

Plaintiff acknowledges in supplemental briefing that *Saelzler* "has several similarities to the case at hand." Yet, plaintiff seeks to distinguish *Saelzler*, by arguing: "In the case at hand, unlike [in] *Saelzler*, the issue is not that the defendant had inadequate security, the issue is that the defendant had no security of any kind. (Italics added.)"[13]

*Saelzler* rejected this contention and, therefore, so do we. The Court of Appeal in *Saelzler* had held, much as plaintiff argues now, that "[w]hen a property owner supplies no security whatsoever … logic and common sense tell us absence of security is a contributing cause of most crimes occurring on that property." (*Saelzler v. Advanced Group 400*, *supra*, 77 Cal.App.4th at p. 1014, *Saelzler*, *supra*, 25 Cal.4th 763.) But our Supreme Court reversed the Court of Appeal, and rejected this rule because it would have precluded summary judgment on the element of causation whenever a defendant-landowner fails to adopt security measures. (*Salzler*, *supra*, 25 Cal.4th at p. 778.)

At its core, plaintiff's argument confuses breach of duty with causation, which are separate tort elements. (See *Saelzler*, *supra*, 25 Cal.4th at pp. 773, 780.) Assuming Motel 6 owed and breached a duty of care to plaintiff, he nonetheless cannot prevail unless he shows the breach bore a causal connection to his injury. (*Id.* at p. 773

---

**13** Plaintiff instead encourages us to rely on *Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017 (*Raven H.*). *Raven H.* is distinguishable because in that case, the assailant entered through a window and plaintiff claimed that defendant's failure to provide security bars on her windows was a cause of the sexual assault. (*Id.* at p. 1023 [assailant "entered her apartment through a window in the dining area"].) Thus, there was evidence that a breach of the duty identified by plaintiff (i.e., failure to provide security bars) was a cause of the injury. Moreover, *Raven H.* involved the alleged failure to provide adequate physical barriers, not the failure to provide security guards. (*Id* at p. 1028 [plaintiff "is not arguing for increased security measures for the entire complex, such as security personnel, as did the plaintiff in *Saelzler*…"].) This distinction is significant. (See *Raven H.*, *supra*, 157 Cal.App.4th at p. 1030, fn. 12.)

["…assuming the defendant owed and breached a duty of care to the plaintiff, she nonetheless cannot prevail unless she shows the breach bore a causal connection to her injury."])

> "*No matter how inexcusable a defendant's act or omission might appear, the plaintiff must nonetheless show the act or omission caused, or substantially contributed to, her injury*. Otherwise, defendants might be held liable for conduct which actually caused no harm, contrary to the recognized policy against making landowners the *insurer* [italics original] of the absolute safety of anyone entering their premises. [Citations.]" (*Id.* at p. 780, italics added.)

## CONCLUSION

To paraphrase *Noble*, *supra*, 168 Cal.App.3d 912, this is "a classic example of a plaintiff establishing what could be described as abstract negligence, in the context that [defendant's] security didn't comport with plaintiff's expert's … notion of 'adequacy,' but failing to" produce evidence of a "causal connection between that negligence and the injury." (*Id.* at p. 918.) "To characterize a landowner's failure to deter the wanton, mindless acts of violence of a third person as the 'cause' of the victim's injuries is (on these facts) to make the landowner the insurer of the absolute safety of everyone who enters the premises." (*Nola M.*, *supra*, 16 Cal.App.4th at p. 437.)

## DISPOSITION

The judgment is affirmed.

                                                      _____

                                                      Poochigian, J.

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Franson, J.

16.