Filed 3/25/22  Mason v. Uber Technologies CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM J. MASON et al.,<br><br>　　Plaintiffs and Appellants,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>　　Defendants and Respondents. | A161000, A161966<br><br>(San Francisco City & County Super. Ct. No.  CGC-18-563924) |

An Uber driver who was transporting four passengers parked his car along the street in front of a San Francisco hotel rather than in the hotel's driveway.  Moments later, one of his rear passengers attempted to exit on the driver's side of the vehicle and opened the car door just as a garbage truck drove past.  Plaintiff William J. Mason, who was standing on the back of the garbage truck, was knocked to the ground, and suffered serious physical injuries.

Mason and his wife[1] sued defendants Francisco Ballesteros Madamba and Uber Technologies, Inc. (Uber) for negligence.  The trial court granted

---

[1] Although plaintiffs share a last name, our references to "Mason" are to William.

defendants' motion for summary judgment, concluding that Madamba did not owe plaintiffs a legal duty as a matter of law to control the conduct of Madamba's passenger or to warn her the garbage truck was approaching. The trial court also determined that defendants did not owe plaintiffs a heightened duty of care as a common carrier because any such duty was owed only to passengers, not third parties like Mason. Finally, the trial court ruled that the passenger's conduct in opening the car door on the street side of the vehicle was the superseding cause of the accident.

We reverse. We agree with plaintiffs that Madamba owed a general duty to exercise due care in offloading his passengers, and whether he breached that duty is a question of fact precluding summary judgment on this record.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Accident

On February 27, 2017, Madamba was driving for Uber[2] when he accepted a rideshare request. Madamba picked up four riders at a bar and drove them to their destination at The Donatello, a San Francisco hotel, located on at the corner of Post and Mason Streets. Madamba was driving on Mason Street and intended to drop his passengers on Mason Street, just south of Post Street. Mason Street is a one-way, two-lane street with two parking lanes, one on each side of the street.

As he approached the hotel, Madamba activated the hazard lights on his car and pulled over to the side of the road in front of the hotel to drop off

___

[2] "Uber provides transportation services to the public by connecting consumers to its ' "partner drivers" ' through the use of a GPS-enabled smartphone application." (*Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1161–1162.)

the riders.  Madamba came to a complete stop, and the front-right and rear-right passengers exited the vehicle.

Charlotte Eliasson, a 22-year-old student from Sweden, was sitting in the left, rear passenger seat.  Eliasson opened the left rear door on the street side of Madamba's car.  At the moment she opened the door, a garbage truck passed by.  William Mason was standing on the right, rear side-step of the garbage truck.  As the truck passed Madamba's car, the rear passenger door struck Mason and he fell to the ground.  Mason suffered severe injuries to his leg, shoulder, and wrist that required surgeries.

Madamba did not see the accident.  He does not usually check his sideview or rearview mirror for oncoming traffic, and did not do so when Eliasson opened the rear door.  Madamba did not instruct Eliasson how or when to get out of the car.  It did not appear that Eliasson and the other passengers were "particularly tired or inebriated in any way."  Eliasson stated that had Madamba provided any instructions on how to safely exit the car, she would have followed them.

## B.  Relevant Trial Court Proceedings

Mason and his wife filed suit in superior court, alleging causes of action for motor vehicle negligence, general negligence, and loss of consortium.

Madamba filed a motion for summary judgment.[3]  In his motion, Madamba argued that (1) plaintiffs did not allege that Madamba failed to use reasonable care and the undisputed facts demonstrated he did not breach any general duty of care in operating his vehicle; (2) Madamba did not violate any traffic laws; and (3) Madamba did not have a special duty to control the conduct of Eliasson, a competent third party adult, to prevent the accident.

---

[3] Uber joined the motion for summary judgment.

3

Plaintiffs opposed the motion, arguing that Madamba breached his duty of care by "fail[ing] to select a safe location, away from traffic, where he could offload his passengers at the hotel," and by dropping his passengers in an unsafe location. They argued there was no reason Madamba could not have used the circular driveway of the hotel to unload his passengers, and the location he selected was unsafe because he parked adjacent to a lane of travel, partially in a red zone, partially blocking a driveway, and across from a parked truck that had cones place next to it in the roadway, narrowing the space near Madamba's vehicle where other cars could safely pass. Plaintiffs argued that because Madamba elected to drop his passengers in an unsafe location, it was incumbent on him to make sure his passengers could safely exit the vehicle, but he did not check his rearview mirrors for approaching traffic nor instruct Eliasson in any way as to how to exit the vehicle. Plaintiffs further argued defendants owed them a duty to control Eliasson's conduct based on the special relationship between Madamba as the possessor of a chattel and Eliasson as a licensee under section 318 of the Restatement Second of Torts.

In their reply brief in the trial court, defendants argued, among other things, that section 318 of the Restatement Second of Torts does not apply to the circumstances at issue in this case; plaintiffs improperly attempted to expand the duty of general care under Civil Code section 1714 to include a duty to control or warn passengers; plaintiffs were bound by their prior admissions in their operative complaint and discovery responses that the sole basis for their negligence claim was that Madamba "*allowed*" Eliasson to open the rear passenger door into traffic; and plaintiffs offered no admissible evidence creating a triable issue of material fact.

4

The trial court granted the motion for summary judgment.  The court concluded that based "on the undisputed facts, defendant Madamba owed no legal duty to plaintiff that could support plaintiff's [*sic*] claims . . . , and that Eliasson's action was the superseding cause of the accident."  Relying on (1) the legal principle that " '[a]s a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct' "; (2) a 40-year-old superior court appellate division case, *California Body & Trailer Mfrs. v. Albrecht* (1971) 16 Cal.App.3d Supp. 1; and (3) Vehicle Code section 22517, the court determined that Madamba owed plaintiffs no duty to control Eliasson's conduct or to find a safer place to drop his passengers.  The court also reasoned that Uber did not owe Mason a heightened duty as a common carrier, because such a duty is owed to passengers, not third parties.  Finally, the trial court rejected plaintiffs' contention that section 318 of the Restatement Second of Torts provided a basis for a legal duty on the grounds that Madamba was a possessor of a chattel who had a duty to control the conduct of his licensee.

The trial court entered judgment for both defendants.  Plaintiffs timely appealed.

## II.

## DISCUSSION

### A.  *Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'  [Citation.]  A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action."  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).)  Once the moving party has met that burden, the burden

5

shifts to the opposing party to show that a triable issue exists.  (Code Civ. Proc., § 437c, subd. (p)(2).)

We review an order granting summary judgment de novo.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)  "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Ibid*.)  " 'We affirm the trial court's decision if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave.' "  (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)

## B.  Duty

Plaintiffs contend the trial court erred in determining that defendants owed no duty of care as a matter of law.  "To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' "  (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.)

Duty is an essential element of the tort of negligence.  (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.)  "Duty is not universal; not every defendant owes every plaintiff a duty of care.  A duty exists only if ' " the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' "  (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 213.)  The determination whether a duty exists is a legal issue for courts to determine, while breach of duty and causation are normally questions of fact for a jury.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 769–770, 772 (*Cabral*); *Staats v. Vintner's Golf Club, LLC, supra*, 25 Cal.App.5th at p. 832.)

Plaintiffs assert that Madamba owed Mason a duty of care under multiple theories. First, they argue that Madamba owed a general duty of reasonable care to avoid dropping passengers off where there was an unreasonable risk that they might open a door into oncoming traffic. Second, they contend Madamba owed a duty because he created the foreseeable risk that Eliasson might open her door into oncoming traffic by stopping on Mason Street. Third, they contend Madamba owed a duty of care based on his special relationship with Eliasson—either as a possessor of a chattel under section 318 of the Restatement Second of Torts or as a common carrier.

As we explain below, we conclude that defendants owed Mason a general duty of care in choosing where and how to offload passengers. Because we conclude defendants owed such a duty as a matter of law, we need not address plaintiffs' additional arguments that defendants owed Mason an affirmative duty of care based on a special relationship either as a common carrier or under section 318 of the Restatement Second of Torts.

### 1. *Forfeiture*

As an initial matter, we reject defendants' argument that plaintiffs forfeited the negligence theories they assert on appeal by not pleading them in the operative complaint or presenting their arguments to the trial court.

With respect to the proper scope of the issues to be resolved at summary judgment, the pleadings play a key role. " '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings.' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.) A moving defendant is not required to go beyond the allegations in the operative complaint, and similarly, an opposing plaintiff may not assert claims or theories not encapsulated by the complaint's allegations. (*Ibid.*)

Here, a fair reading of the complaint reveals two theories of negligence liability—motor vehicle negligence and general negligence. It is well established that negligence may be pleaded generally. (Code Civ. Proc., § 452 ["In the construction of pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."]; 4 Witkin, Cal. Procedure (6th ed. 2021) Pleading, § 604, p. 684 [plaintiff adequately alleges motor vehicle negligence by alleging "that 'defendant negligently operated the automobile' without specifying a narrower negligent act such as speeding, turning without a signal, going through a stoplight, driving with defective brakes, etc."].)

In considering what issues are properly raised in opposition to a summary judgment motion, we construe the allegations of the complaint liberally. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257 ["new factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them"]; *Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1211 (*Jones*) ["courts are encouraged to take a liberal approach in determining the scope of the pleadings" on summary judgment "so long as those pleadings provide adequate notice to the opposing party of the theories on which relief is being sought"].)

Plaintiffs' first amended complaint alleged generally that Madamba owned and operated the motor vehicle involved in the accident, that Eliasson was negligent in opening her door into a moving lane of traffic, and that all defendants, including Madamba, Uber, and Eliasson, "negligently caused" Mason's injuries.[4] In discovery, plaintiffs were asked to identify "any act or

---

[4] The first amended complaint alleged that Uber entrusted the vehicle to Madamba and Madamba was an agent and employee of Uber.

8

omission" by Madamba that fell below the standard of care. Mason responded that Madamba, "a professional driver who was transporting passengers for pay for Uber at the time of the subject incident, was negligent at the time of the subject incident. [Madamba] allowed a passenger in his vehicle, [Eliasson], to open the left rear passenger door of the vehicle directly into Plaintiff William Mason, causing Plaintiff severe and permanent injuries. [Madamba's] negligence was a legal and proximate cause and substantial factor in causing the injuries and damages to Plaintiff William Mason." Taken together and construed liberally, the allegations that Madamba was transporting passengers for pay, negligently operated his vehicle, and "allowed" Eliasson to open the left rear passenger door into moving traffic (i.e., Mason Street) fairly encompass plaintiffs' theories that Madamba breached the general duty of care by (1) offloading his passengers where they might open a door directly into traffic, and (2) failing to prevent Eliasson from doing so. (See, e.g., *Jones*, *supra*, 39 Cal.App.5th at p. 1211 [negligence per se was within the scope of issues framed by plaintiff's personal injury premises liability claim]; *Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1084 [new factual issue may be presented in connection with motion for summary judgment so long as the theory is encompassed by the controlling pleading, construed broadly].)

We likewise reject defendants' argument that plaintiffs forfeited these issues by failing to raise them adequately in their opposition to the summary judgment motion. In their opposition memorandum of points and authorities, plaintiffs argued and cited to evidence in their separate statement that Madamba failed to exercise due care when dropping off his Uber passengers because he failed to select a safe location (such as the hotel driveway), dropped his passengers immediately adjacent to a lane of travel in a

9

narrowed roadway, and did not do anything to make sure his passengers could safely exit, such as check his mirrors, instruct them, or warn them as they were exiting. These points and evidence were also the focus of the parties' arguments at the hearing on the motion. And in ruling on the summary judgment motion, the trial court addressed plaintiffs' arguments and evidence, concluding that "Madamba did not owe plaintiff a legal duty to prevent Eliasson from opening her door. While it is possible that Madamba could have found a safer place to drop his passengers, such as the hotel's circular driveaway, the theoretical availability of such an option is insufficient to give rise to a duty to control his passenger, Eliasson." This is not a case like those cited by defendants in which parties are attempting to raise issues on appeal that were not factually presented or developed in the trial court. (See, e.g., *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 503 [the facts necessary to support appellants' claim were not before the trial court at all or not fully developed and factually presented to the trial court]; *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 965–966 [rejecting arguments raised for first time on appeal that trial court should have independently examined and liberally construed expert's cost analysis in determining admissibility of evidence]; *Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 54–55 [plaintiff could not argue new issue on appeal where it did not expressly raise issue in memorandum of points and authorities, did not cite supporting evidence in opposition papers, did not appear at hearing, and stipulated to trial court's tentative ruling].)

We now address whether the trial court erred in concluding defendants owed no duty as a matter of law.

### 2. *General Duty of Care*

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person. . . .' (Civ. Code, § 1714, subd. (a).) In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." ' " (*Cabral, supra,* 51 Cal.4th at p. 771.) This general duty of care encompasses a duty not to expose others to an unreasonable risk of harm at the hands of third parties. (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 (*Lugtu*); *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1148 (*Kesner*) [general duty to exercise due care " 'includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person' "].)

"[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public policy.' " (*Cabral, supra,* 51 Cal.4th at p. 771.) When deciding whether public policy favors an exception to the general duty of care, courts do not look to the particular facts of the case before them but ask whether "carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." (*Cabral,* at p. 772; *Kesner, supra,* 1 Cal.5th at pp. 1143–1144 [court-crafted exceptions to the duty rule are appropriate " 'when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases' "].) By making this determination "on a more general basis suitable to the formulation of a legal rule," courts preserve the important distinction between the role of the court in determining the *legal* question of the

11

existence and scope of a duty versus the role of the jury in determining the *factual* question whether the defendant acted reasonably under the circumstances. (*Cabral*, at p. 773.)

To determine whether policy considerations support an exception to or limitation of the general duty of care, courts look to the following seven factors identified by our Supreme Court in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*): "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at p. 113; *Cabral*, *supra*, 51 Cal.4th at p. 771.)

Relying on *Lugtu*, *supra*, 26 Cal.4th 703 and *Cabral*, *supra*, 51 Cal.4th 764, plaintiffs argue that Madamba owed Mason a duty of reasonable care to avoid offloading passengers where they might open their doors into oncoming traffic. They also frame this duty as a duty to "choose a reasonably safe place to offload passengers." In addition, plaintiffs contend that having chosen to offload his passengers where there was a foreseeable risk they might open a door into traffic, Madamba incurred a duty of reasonable care to try to prevent his passenger from doing so.

In *Lugtu*, a California Highway Patrol officer directed the plaintiffs to stop their vehicle in the center median area of a highway. (*Lugtu*, *supra*, 26 Cal.4th at p. 708.) The plaintiffs were subsequently injured when a pickup truck veered off the road and struck their car. (*Id.* at p. 709.) The plaintiffs sued, among others, the highway patrol officer, alleging he violated

12

the general duty of due care by placing them in a situation in which they were exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a third person.  (*Id.* at p. 716.)  Relying on "the basic tort principle recognizing that the general duty of due care includes a duty not to expose others to an unreasonable risk of injury at the hand of third parties," the Supreme Court held that "a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officers stops, and that this duty includes the obligation not to expose such persons to an unreasonable risk of injury by third parties."  (*Id.* at pp. 717, 718.)

In *Cabral*, a tractor-trailer truck driver stopped his truck on the side of a freeway to have a snack in an area designated for emergency parking. Cabral, who was traveling at 70 to 80 miles per hour, swerved off the road, crashed into the truck, and died.  Cabral's widow sued defendants, alleging the truck driver's negligence in stopping for nonemergency reasons on the freeway shoulder caused her husband's death. (*Cabral, supra*, 51 Cal.4th at pp. 769–770.)

The Supreme Court reiterated the general rule that each person owes others a duty of ordinary care.  (*Cabral, supra*, 51 Cal.4th at p. 771.)  Noting the general duty under Civil Code section 1714 "indisputably applies to the operation of a motor vehicle," the court explained that the question was not whether a new duty should be created, but whether an exception to the duty is required by the foreseeability and public policy considerations identified in *Rowland*.  (*Cabral*, at pp. 774, 783.)  After considering application of the *Rowland* factors, the court declined to recognize an exception to the general duty of care for drivers stopping alongside the freeway.  (*Cabral*, at pp. 774–784.)

Defendants do not disagree that the general duty of care "indisputably applies to the operation of a motor vehicle" and that Madamba owed such a duty in this case. (*Cabral*, *supra*, 51 Cal.4th at p. 774.) Indeed, they recognized as much in the trial court when they moved for summary judgment on the ground that they had not *breached* that duty. Defendants attempt to distinguish *Lugtu* and *Cabral*, however, and argue this court instead should be guided by *California Body & Trailer Mfrs. v. Albrecht*, *supra*, 16 Cal.App.3d Supp. 1 (*Albrecht*), which in turn relied on *Richards v. Stanley* (1954) 43 Cal.2d 60 (*Richards*), to conclude that a driver is under no duty to persons who may be injured by the negligence of their guest in the absence of notice that the guest is incompetent.

While *Lugtu* and *Cabral* are both distinguishable on their facts, we disagree that those differences support a finding of no duty of care here. Defendants contend that "*Lugtu*'s analysis is unique to the law enforcement context and simply follows one of the recognized special relationships that creates a duty on the part of custodians to those in their custody." In *Lugtu*, however, the Supreme Court did not consider whether a special relationship existed between the highway patrol officer and the plaintiffs but grounded its analysis in the general duty of care under Civil Code section 1714. (*Lugtu*, *supra*, 26 Cal.4th at pp. 716–717.)

Defendants argue that *Cabral* is distinguishable because in that case, the truck driver stopped along a freeway whereas here, Madamba stopped on the side of a city street where offloading passengers is both routine and legal. But the *Cabral* court's analysis did not turn on the legality of the defendant's conduct. (*Cabral*, *supra*, 51 Cal.4th at p. 782.) On the *duty* question, the court explained that the factual details of the accident, including whether

parking was permitted where Cabral stopped his vehicle, were not crucial to whether he owed a duty of ordinary care.[5] (*Cabral*, at p. 774.)

Nor do we find the cases on which defendants primarily rely, *Albrecht* and *Richards*, persuasive in deciding whether Madamba owed a general duty of reasonable care in offloading his passengers. In *Albrecht*, the defendant had parked his car on the left side of a one-way street. The plaintiff's vehicle was damaged when the defendant's guest opened the passenger door of the defendant's car without looking. The trial judge found the defendant was negligent for failing to prevent the passenger from opening the car door into oncoming traffic. (*Albrecht*, *supra*, 16 Cal.App.3d at p. Supp. 3.) The Appellate Division of the Alameda County Superior Court reversed. Although the court recognized that the "driver of an automobile must manage his vehicle so as not to create an unreasonable risk of harm to others," it concluded, "in the absence of facts putting the driver on notice that the guest

_____

[5] Defendants also argue, in a footnote, that *Cabral* is distinguishable because the accident in that case did not involve third party negligence. Although that is true, the relevant question for purposes of the duty analysis, as many courts have recognized, is not whether third party negligence was involved, but whether the risk of harm was reasonably foreseeable. (See, e.g., *Kesner*, *supra*, 1 Cal.5th at p. 1148 [duty of due care includes duty not to place another person in situation where they are exposed to reasonably foreseeable negligence of another person]; *Lugtu*, *supra*, 26 Cal.4th at p. 716 [same]; *Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 367 [rejecting defense argument that intervening negligence by vehicle driver rendered accident unforeseeable]; *Huang v. The Bicycle Casino, Inc.* (2016) 4 Cal.App.5th 329, 345–346 [shuttle operator owed general duty of reasonable care to protect boarding passengers from reasonably foreseeable conduct of other passengers shoving to board bus]; *Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 145 [rejecting argument that involvement of third party driver in auto accident alone precluded a duty of care on part of defendant]; *Shipp v. Western Engineering, Inc.* (2020) 55 Cal.App.5th 476, 498–499 [highway contractor owed duty to motorist injured in rear-end collision].)

is incompetent in connection with the particular situation, the driver is under no duty to persons who may be injured by the negligence of the guest." (*Ibid.*, citing *Richards*, *supra*, 43 Cal.2d at p. 63.) In holding as a matter of law that the defendant owed no duty in that case, the *Albrecht* court determined that "[o]bviously, the parking by the defendant of his car on the left side of the road was not negligence, for the settled statement plainly sets forth that defendant lawfully parked his car. The only thing that negligence could be based on would be a duty of defendant in connection with the opening of the door by the guest." (*Albrecht*, *supra*, 16 Cal.App.3d at p. Supp. 4.) *Albrecht* thus acknowledged that a driver owes a general duty to exercise reasonable care in how he manages his vehicle so as not to create an unreasonable risk of harm to others but held based on the facts of that case that the defendant's conduct was not negligent.[6] As discussed above, however, we must assess the existence of a duty of care at a categorical level, not based on the facts of a particular case.

*Albrecht* also relied on *Richards*, and defendants argue that case controls here as well. As our Supreme Court explained in *Cabral*, however, *Richards* was a "key-in-the-ignition" case involving "significantly different facts." (*Cabral*, *supra*, 51 Cal.4th at p. 778.) In *Richards*, the defendant left her car unlocked with the key in the ignition. A thief stole the car and injured the plaintiff while driving recklessly. (*Richards*, *supra*, 43 Cal.2d at

---

[6] To the extent *Albrecht* concluded no duty of reasonable care is owed as a matter of law where a defendant is legally parked, it failed to cite any legal authority in support of such a principle. (See, e.g., *Cabral*, *supra*, 51 Cal.4th at p. 774 [whether parking for emergencies was permitted not relevant to whether categorical duty rule applies]; *Lawson v. Safeway Inc.* (2010) 191 Cal.App.4th 400, 411 [driver was not excepted from duty of due care merely because he was legally parked, and issue of his negligence was question for jury].)

pp. 61–62.) Our Supreme Court declined to recognize a duty of care, relying on the twin principles that in the absence of a special relationship, there is no duty to control the conduct of a third person and that ordinarily an automobile owner is not negligent if he lends his car to another. (*Id.* at pp. 65–66.) *Richards* does not support a holding that Madamba owed plaintiffs no duty of due care in offloading his passengers.

Defendants also rely on the legal principle that absent a special relationship, there is no duty to control the conduct of another. (See *Brown v. USA Taekwondo, supra,* 11 Cal.5th at p. 211; *Regents, supra,* 4 Cal.5th at p. 627.) That rule does not apply, however, in cases of misfeasance, where the defendant has created or increased the risk to the plaintiff. (*Brown*, at p. 214 ["Generally the 'person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another' from that peril."]; *Lugtu, supra,* 26 Cal.4th at p. 716; *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 49.) Where the defendant's act has made the plaintiff's position worse (i.e. created or increased the risk of harm), the question of duty is governed by the ordinary duty of due care. (*Weirum*, at p. 49.)

Defendants argue Madamba did not create the danger simply by causing Eliasson to be in a location where she injured Mason. But the only case they cite for that proposition, *Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150, is inapposite. In *Mikialian*, the plaintiff, a tow truck driver, was struck by a hit-and-run driver while parked on a city street to tow a car that had been in a traffic accident. (*Id.* at pp. 153–154.) The plaintiff's theory of liability was that the police officers who had called him to the scene of the accident owed him a duty of care based on a special relationship because they directed him to park his tow truck at a certain spot on the street. (*Id.* at p. 159.) At his deposition, however, the plaintiff had testified

17

unequivocally that the decision to park where he did was his own. (*Id.* at pp. 154–155.) Because no attempt was made to withdraw or explain these admissions, the plaintiff's contrary testimony at trial was not substantial evidence creating an issue of fact. (*Id.* at pp. 158, 160.) As there was no basis for a special relationship and no other evidence supporting a breach of duty, nonsuit was properly granted. (*Id.* at pp. 165–166.) Here, by contrast, plaintiffs argue Madamba owed a duty of reasonable care because he chose to offload his passengers in an unsafe location, increasing the risk someone would be injured by a door opening into traffic. As we discuss further below, plaintiffs presented sufficient evidence to raise a triable issue of fact as to that issue.

### 3. Rowland *factors*

We now consider whether we should recognize an exception to the general duty of care under the factors identified by our Supreme Court in *Rowland*, *supra*, 69 Cal.2d 108. In considering this question, we will frame the duty issue as whether a rideshare driver owes other vehicles a duty of ordinary care in choosing where and how to offload passengers. (See, e.g., *Cabral*, *supra*, 51 Cal.4th at p. 774 [duty question framed as "whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road" or "whether a categorical exemption to [the general duty of care] should be made exempting drivers from potential liability to other freeway users for stopping alongside a freeway"]; *Pedeferri v. Seidner Enterprises*, *supra*, 216 Cal.App.4th at p. 366 (*Pedeferri*) [framing duty question as "whether a commercial vendor owes a duty of care to persons on or near the roadways who are injured as a result of the vendor's negligence in loading and securing cargo in a vehicle in a way that distracts the vehicle's driver"].)

Defendants contend application of the *Rowland* factors supports a categorical no-duty rule here. We disagree.

We begin with the first group of *Rowland* factors, which concern the foreseeability of harm: foreseeability, certainty, and the closeness of the connection between the defendant's act and the plaintiff's injury. (*Cabral*, *supra*, 51 Cal.4th at p. 774.) "[A]s to foreseeability, . . . the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .' " (*Id*. at p. 772.) It is reasonably foreseeable that passengers exiting a vehicle parked alongside a city street may open a car door into traffic as they are exiting the vehicle. Passengers getting out of a rideshare vehicle may be distracted, unfamiliar with locations to which they have been driven, impaired, or simply not paying attention. Given the high volume of traffic on city streets, it is not surprising such accidents may occur and that Uber drivers, who make a living by transporting passengers, would be aware of these risks.

Defendants contend it is *not* foreseeable that a passenger would exit a car "without looking, in violation of the Vehicle Code," but they do not explain why not. (Italics and boldface omitted.) Indeed, the fact that third party conduct may be "negligent, intentionally tortious, or criminal" does not render it unforeseeable. (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58; *Kesner*, *supra*, 1 Cal.5th at p. 1145 [" 'what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence' "].) Rather, in undertaking the duty analysis, we measure foreseeability by " ' "whatever is likely enough in the setting of

19

modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." ' " (*Kesner*, at p. 1145.) As defendants state in their respondent's brief, "there would always be a risk that Eliasson would open the door without looking and hit someone or something," and such a risk was "always inherent in offloading passengers."

The certainty of injury factor weighs in favor of a duty where, as here, there are undisputed physical injuries. (*Cabral*, *supra*, 51 Cal.4th at p. 781, fn. 9.) Regarding the closeness of the connection between the conduct and the injury, defendants argue any connection between Madamba's conduct and Mason's injury was too attenuated because Madamba did nothing more than offload passengers in a location that allowed Eliasson to open her door into traffic. As our Supreme Court has explained, however, the evaluation of this factor is " 'strongly related to the question of foreseeability itself.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1148.) "In determining whether one has a duty to prevent injury that is the result of third party conduct, the touchstone of the analysis is the foreseeability of that intervening conduct." (*Ibid.*) As we have discussed, it is reasonably foreseeable that a passenger exiting a rideshare vehicle may open a car door into traffic.

As for the public policy factors of moral blame, preventing future harm, the burden of compliance, and the availability of insurance, defendants make no persuasive argument that this case should categorically be outside the norm of the general duty of due care. We do not consider whether insurance is available as no party presented evidence on that issue. We agree that there is little moral blame associated with parking between the curb and a lane of traffic to offload passengers, but the interests of preventing future harm are best served by a policy that requires drivers on busy city streets to exercise due care in selecting a safe location to offload passengers. The

20

burden of requiring defendants to choose a reasonably safe place to offload passengers or warn exiting passengers about oncoming traffic is not an unreasonable expectation on crowded city streets. Defendants argue it will have "sweeping consequences for drivers everywhere" because they will be required "to conduct case-by-case inspections and evaluate all sorts of dangers in deciding where to offload their passengers." But such assessments are already required of drivers who undeniably owe a duty of reasonable care to prevent injury to others in the operation of their motor vehicles.

We thus conclude that public policy considerations do not support a categorical exception to the general duty rideshare drivers owe to exercise reasonable care in choosing where and how to offload their passengers, and accordingly, defendants were not entitled to summary judgment on the ground they owed plaintiffs no duty.

We emphasize that our holding does not establish a new duty of care or expand the scope of the general duty of due care. As our Supreme Court explained in *Cabral*, "The question is not whether a *new duty* should be created, but whether an *exception* to Civil Code section 1714's duty of exercising ordinary care in one's activities, including operation of a motor vehicle, should be created. . . . [W]hether the duty of ordinary care has been breached depends on the particular circumstances, including those aggravating or mitigating the risk created and those justifying [the defendant's conduct]. [Defendant] offers no support for its assertion that juries cannot be trusted to weigh these considerations under the particular facts of each case, as they do in deciding negligence generally." (*Cabral, supra,* 51 Cal.4th at p. 783; see also *Regents, supra,* 4 Cal.5th at p. 634 ["a duty of care is not the equivalent of liability"].)

## C.  Breach of Duty

We asked the parties to file supplemental briefs addressing whether, assuming a duty of care exists, the parties met their respective burdens on summary judgment with respect to breach of the duty of care.  Although generally the inquiry whether a defendant breached a duty of care is a question of fact for the jury, in situations "where reasonable jurors could draw only one conclusion from the evidence presented, lack of negligence may be determined as a matter of law, and summary judgment [may be] granted." (*Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1214; see also *Cabral*, *supra*, 51 Cal.4th at p. 773 ["On the facts of a particular case, a trial or appellate court may hold that no reasonable jury could find the defendant failed to act with reasonable prudence under the circumstances.  Such a holding is simply to say that as a matter of law the defendant *did not breach* his or her duty of care, i.e., was not negligent toward the plaintiff under the circumstances shown by the evidence."].)

This is not such a case.  In opposition to the motion for summary judgment, plaintiffs presented evidence that Madamba could have parked in the hotel's driveway rather than on Mason Street.  At his deposition, Madamba conceded that the hotel had a driveway completely away from traffic lanes and he could not remember whether anything was blocking the driveway or preventing him from pulling into the driveway.  When asked if he agreed it would be safer to drop the passengers off in the driveway than the street, he responded:  "Assuming there was no one there, and there was no vehicle there, it would have been a safer spot."  Plaintiffs also presented video evidence that Madamba parked across the street from a large box truck that had cones placed next to it in the left lane of traffic, which plaintiffs

contend narrowed the total usable width of the two travel lanes between the truck and Madamba's car.

In addition, plaintiffs argued that because Madamba elected to drop his passengers "immediately in the zone of traffic," it was incumbent on him to make sure they could safely exit the vehicle by either checking his mirrors for oncoming traffic or giving an instruction or warning to Eliasson before she attempted to exit the vehicle. In the separate statement of undisputed facts accompanying their moving papers, defendants presented evidence that Madamba did not instruct Eliasson on how to exit the car, including which door to exit from, and did not tell her it was safe to open the left, rear passenger door. In their opposition, plaintiffs presented Madamba's deposition testimony that he does not normally check his sideview or rearview mirror to determine if it is safe for his passengers to exit his vehicle, and did not do so on this occasion. Plaintiffs also presented a declaration from Eliasson stating Madamba did not instruct her how to safely exit the vehicle or warn her it was unsafe to exit into the roadway. Eliasson further stated that had he given such admonitions, she would have followed his instructions or heeded his warning.

We conclude plaintiffs met their burden to demonstrate the existence of a triable issue of fact as to whether Madamba breached his duty to exercise reasonable care in offloading his passengers. Whether Madamba's selection of location to drop his passengers and conduct in failing to check his mirrors or warn his passengers about how to exit the car was reasonable is a question of fact for the jury. Accordingly, the trial court erred in granting summary judgment.

### D. Causation

The trial court also concluded that summary judgment was appropriate because Eliasson's conduct was the superseding cause of the accident as a matter of law. We disagree.

A superseding cause "absolves a tortfeasor, even though his conduct *was* a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573, fn. 9.) On the other hand, "when a defendant's negligence is based upon his or her having exposed the plaintiff to an unreasonable risk of harm from the actions of others, the occurrence of the type of conduct against which the defendant had a duty to protect the plaintiff cannot properly constitute a superseding cause that completely relieves the defendant of any responsibility for the plaintiff's injuries." (*Lugtu*, *supra*, 26 Cal.4th at p. 725; accord, *Pedeferri*, *supra*, 216 Cal.App.4th at p. 373 [negligence or even recklessness of third party will not be superseding cause if it is a normal response to a situation created by defendant, and only " ' "highly unusual or extraordinary" ' " conduct will constitute a superseding cause].)

As we have already discussed in evaluating the existence of a duty of care, the type of third party conduct involved in this case (a passenger opening a car door into a lane of traffic) is reasonably foreseeable. It is certainly not the kind of " ' "highly unusual or extraordinary" ' " conduct which constitutes a superseding cause as a matter of law. (*Pedeferri*, *supra*, 216 Cal.App.4th at p. 373.) As a result, defendants were not entitled to summary judgment on this basis.

24

## III.

## DISPOSITION

We reverse the judgment.  Plaintiffs are to recover their costs on appeal.

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

EAST, J.*

A161000, A161966
*Mason v. Uber Technologies, Inc.*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26